No. 33,318

THE AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, *Appellant,*
v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS,
*Appellee.*

(69 P. 2d 1091)

Opinion filed July 10, 1937.

*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellant.

*Lester M. Goodell,* assistant attorney general, *Wint Smith* and *Otho W. Lomax,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order sustaining defendant's demurrer to plaintiff's petition. Briefly stated, and omitting details, the petition alleged that in April, 1934, one Glenn Calder was in the employ of the Concordia Creamery Company as a truck driver; that both were operating under the workmen's com-

pensation act; that plaintiff was the employer's insurance carrier; that on a date named Calder, while driving a truck for his employer on a state highway, and without contributing negligence on his part, started to drive across a certain bridge, which was a part of the highway, when the bridge gave way, precipitating him and the truck to the bottom of the creek bed; that the bridge was defective in described respects, which defects were known by the highway commission officials more than five days prior thereto; that as a result Calder sustained certain personal injuries; that he gave written notice thereof to the director of the state highway commission in the form and within the time provided by statute (G. S. 1935, 68-419); that Calder did not pursue his remedy against the state highway commission, but elected to take compensation from his employer, as he was authorized to do by statute (G. S. 1935, 44-504); that Calder duly made his claim for compensation to the compensation commissioner; that such compensation was allowed after a hearing, and that plaintiff, as the insurance carrier, paid the compensation, which, with medical attention and expenses incident to the hearing, aggregated $1,506.22, for which sum, with interest from a date named, plaintiff prayed judgment.

As a basis for its authority to maintain this action plaintiff cites one section of our statutes relating to state highways (G. S. 1935, 68-419) and two sections of our workmen's compensation act (G. S. 1935, 44-504, 44-532). The pertinent portions of these sections read as follows:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge . . . may recover such damages from the state of Kansas; that is to say, such recovery may be from the state when the director of highways," or other named officials, "shall have had notice of such defects five days prior to the time when such damage was sustained, and for any damage so sustained the injured party may sue the state highway commission, . . . *Provided,* That no such action shall be maintained unless within ninety days after the sustaining of such damage, written notice, stating the date, when, and place where such damage was sustained, the name and correct post-office address of the person sustaining such damage, and the character of the damage sustained, shall be served upon the director of highways, . . ." (G. S. 1935, 68-419.)

"When the injury or death for which compensation is payable under this act was caused under circumstances creating a legal liability against some person other than the employer to pay damage, the injured workman or his personal representative shall within ninety (90) days of the date of receiving said injury elect whether to take compensation under this act or to pursue his

remedy against such other person. Such election must be in writing and must be delivered to the employer in person or by registered mail, and the acceptance of compensation by an injured workman shall be construed as a positive election to accept compensation under this section. Failure on the part of the injured employee or his personal representative to file a written election with the employer within ninety (90) days that he will pursue his remedy against the negligent third party shall operate as an election to accept compensation and as an assignment of any cause of action in tort which the employee or his personal representative may have against any other party for such injury or death, and such employer may enforce in his own name, or the name of the workman, the liability of such other party for their benefit as their interests may appear." (G. S. 1935, 44-504.)

"Where the payment of compensation of the workman, or his dependents, is insured, by a policy or policies, at the expense of the employer, the insurer shall be subrogated to the rights and duties under this act of the employer so far as appropriate . . ." (G. S. 1935, 44-532.)

Upon behalf of appellant it was argued that the petition states facts sufficient to constitute a cause of action; that under the facts alleged Calder had a cause of action against the state, with authority to sue the state highway commission; that he elected to take compensation, and that his employer, the Concordia Creamery Company, by paying him compensation, or causing it to be paid, became the assignee of Calder's claim against the state, which claim it could pursue by an action against the state highway commission, brought either in the name of Calder or in its own name, and that the plaintiff, being the insurer of the Concordia Creamery Company under a policy of insurance, and having paid the compensation and expenses awarded against the Concordia Creamery Company, and incurred by it, was subrogated to the rights of the Concordia Creamery Company; that this subrogation carried with it the assignment of Calder's claim against the state highway commission and the right to sue in its own name, or the name of Calder, for the damages it had sustained, namely, the compensation and expenses it had paid as a result of Calder's injury.

Supporting this argument appellant cites *Maryland Casualty Co. v. Ladd,* 121 Kan. 659, 249 Pac. 867. There an employee of Ammerman, who operated under the workmen's compensation act, was injured by an automobile negligently operated by one Ladd. The Maryland Casualty Company was Ammerman's insurance carrier and was obliged to pay the compensation awarded the employee. It thereafter brought suit against Ladd to recover the amount paid. It was held the plaintiff had a right to recover except for

the fact that he had brought the action too late, the statute of limitations having run, a feature not present here. Since the accident which gave rise to that case the statute there considered (R. S. 44-504) was amended (Laws 1927, ch. 232), and appears now as G. S. 1935, 44-504. We deem it unnecessary to consider whether this amendment requires any different construction insofar as the case before us is concerned.

Plaintiff in its petition also pleaded it was subrogated to the rights of the Concordia Creamery Company and of its employee Calder under the subrogation clause of the insurance policy, which reads:

"The company shall be subrogated, in case of any payment under this policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this employer, or in any employee or his dependents claiming hereunder against persons, corporations, associations, or estates."

Turning now to the legal questions which we deem controlling: The subrogation clause in the policy pertains to rights of recovery "vested by law" in the employer or any employee against "persons, corporations, associations, or estates." As applied to this case the term "vested by law" would have to refer to the statutes above mentioned, and the wording of the paragraph does not specifically provide for subrogation respecting claims against the state or its political subdivisions. In *U. S. Casualty Company v. State Highway Dept.*, 155 S. C. 77, 151 S. E. 887, the statute involved was substantially the same as our G. S. 1935, 68-419. The insurance carrier of the party alleged to have sustained damages by reason of a defect in the highway brought an action against the state highway commission predicated upon a subrogation clause in its policy similar to the one before us. The right to maintain the action by virtue of the subrogation clause was denied. In the opinion the court said:

"Counsel for the respondent, in his brief but very clear argument, cites several cases supporting the principle that an insurance company is subrogated to the rights of its insured against the party who occasions the loss. That principle is generally recognized in transactions between individuals. But it is not applicable here. So far as we are able to discover, none of the cited cases touch the questions at issue in this cause, for in none of them was a state, or one of its political subdivisions, a party to the litigation." (p. 85.)

We think this conclusion sound and that it is applicable here, especially in view of the fact that the clause does not provide specifically for subrogation with respect to claims against the state or its political subdivisions.

In the case last cited, as appellant points out, there appear to have

been no statutes considered by the court providing for subrogation similar to G. S. 1935, 44-504, 44-532, above mentioned. Appellant argues these statutes require a different result than that reached in the South Carolina case. We think not. These sections are parts of our workmen's compensation act, originally enacted in 1911, and later amended in several particulars, and now G. S. 1935, 44-501 to 44-565. At all times the entire act has applied "only to employment in the course of the employer's trade or business." For this reason it was held that the act was not applicable to any of the activities of the state, county, or city. It applied by its terms specifically to certain types of employment in industry. Others were permitted to elect to come within the purview of the act. It was not until 1935 (Laws 1935, ch. 202) that the state highway commission, counties, cities, school districts, sewer districts, drainage districts, and other public or quasi-public corporations in the state were given permission to elect to come within the purview of the act. So at the time of the injury alleged to have been sustained by Calder the workmen's compensation act had no application to the state highway commission. Hence the provisions of G. S. 1935, 44-504, 44-532, relied upon by appellant, are not helpful to it. In this connection, see *Southern Surety Co. v. Parsons*, 132 Kan. 355, 295 Pac. 727. We need not stop to inquire whether damages sustained by travel on a state highway by reason of defects therein could in any event be regarded as within the scope of business transacted by the state highway commission, since that question is not before us.

It is a fundamental principle, well settled in the law of this state and generally elsewhere, that the state is regarded as a sovereign governmental body and as such cannot be sued in its own courts by individuals or private corporations, except to the extent it has given its consent thereto. In this state such consent must be given by an act of the legislature. It is also well settled that since the right of action by an individual or private corporation against the state may be granted or withheld at the pleasure of the state, acting through its legislature, such permission may be granted with respect to certain causes of action only, and with respect to certain claimants only, and also may provide conditions precedent to the bringing of such an action and the limitation of time in which they must be brought. There is no serious controversy in this case about the fundamental soundness of these principles.

Appellant contends that this is not an action against the state;

that it is one against the state highway commission, and points out that by G. S. 1935, 74-2001, the legislature "created a state highway commission which shall be a body corporate with powers to sue and be sued;" that G. S. 1935, 68-404 *et seq.*, confer upon the state highway commission comprehensive powers and duties. Appellant quotes some of the language from *McCandliss Construction Co. v. Neosho County Comm'rs,* 132 Kan. 651, 296 Pac. 720, where, discussing action taken by the state, in harmony with the constitutional amendment, to construct and maintain a state system of highways, and the right of one to sue the state highway commission on certain contracts for highway construction, it was said:

"In order to carry that work forward it has created a quasi-corporate body and given it the powers, duties and responsibilities necessary for that purpose, and with respect to such work and contracts made in relation thereto it has specifically authorized that unit of government to be sued; hence, if it be an action against the state, the state, by appropriate legislative action, has given its consent to the suit."

It is further pointed out that by G. S. 1935, 68-419, the legislature has permitted certain actions for damages to be brought against the state highway commission. From all this, however, it does not follow that an action against the state highway commission under G. S. 1935, 68-419, is not an action against the state. Indeed, the contrary is true, as the section specifically provides "any person who shall . . . sustain damage by reason of any defective bridge . . . may recover such damages from the state of Kansas," and the section specifically provides that the action shall be brought against the state highway commission. In other words, the legislature named the state highway commission as the party defendant in an action against the state for such damages; hence there is no room to say that the action is not one against the state.

By giving its consent to be sued on certain contracts and for certain damages by an action brought against the state highway commission the state has not consented that it, or the state highway commission, may be sued by anyone and upon every cause of action. (*Payne v. State Highway Comm.,* 136 Kan. 561, 16 P. 2d 509; *Cashin v. State Highway Comm.,* 136 Kan. 659, 17 P. 2d 838; *Barker v. Hufty Rock Asphalt Co.,* 136 Kan. 834, 18 P. 2d 568; *State, ex rel., v. State Highway Comm.,* 138 Kan. 913, 917, 28 P. 2d 770; *Rome Mfg. Co. v. State Highway Comm.,* 141 Kan. 385, 41 P. 2d 761.)

The consent of a state to be sued, as expressed by an act of the

legislature, should be strictly construed so as not to enlarge the privilege granted. In 59 C. J. 303 it is said:

". . . . It is usually said that statutes authorizing suit against the state are to be strictly construed, since they are in derogation of the state's sovereignty."

To the same effect is 25 R. C. L. 416. Sutherland, in his work on Statutory Construction (2d ed., § 558), puts it thus:

"Public rights will not be treated as relinquished or conveyed away by inference or legal construction. Statutes permitting the state to be sued are in derogation of its sovereignty and will be strictly construed." (p. 1038.)

In the opinion in *Barker v. Hufty Rock Asphalt Co.*, 136 Kan. 834, 836, 18 P. 2d 568, this language is found:

"All parties concede that under the law the state cannot be made a defendant or be sued in any court unless it has consented to be sued. The legislature may give such consent, but before it can be regarded as having waived its sovereign right of immunity, it must be made in express terms so clear as to leave no doubt of the legislative purpose." (Citing earlier Kansas cases.)

In some respects the ruling of the court in *Asbell v. State*, 60 Kan. 51, 55 Pac. 338, is especially applicable here. Asbell, the plaintiff in that case, previously had been convicted of a felony. At a subsequent term of court he filed a petition for a new trial on the ground of newly discovered evidence. In that petition plaintiff predicated his right to maintain the action upon the theory that a section of our criminal code authorized a new trial to be granted in criminal cases "for like causes and under the like circumstances as in civil cases," and a section of the civil code which authorized a petition for a new trial upon the ground of newly discovered evidence, to be filed after the term. Some other sections of the statute were referred to incidentally as tending to support plaintiff's view. Plaintiff claimed the statutes conferred upon the courts jurisdiction to entertain suits against the state. Answering that, the court said:

"That claim . . . is based upon a theory of statutory interpretation which raises nothing beyond an implication, more or less strong. This will not suffice. . . . To compel a state upon theories of doubtful statutory interpretation to appear as defendant suitor in its own courts, and to litigate with private parties as to whether it had abnegated its sovereignty or its right of exemption from suit would be intolerable. . . . There being no statute which in explicit terms authorized the suit . . ." (pp. 55, 56.)

It was not deemed necessary to discuss other questions argued.

In a similar way plaintiff's action here is predicated upon theories of statutory interpretation giving rise to an implication of authority

for the action more or less strong. There is no statute which explicitly authorizes plaintiff to maintain this action. The statute (G. S. 1935, 68-419) authorizes certain persons who sustain damages by reason of defects in the state highways to recover damages from the state by an action against the state highway commission. It was not the plaintiff, but was Calder, if anyone, who sustained damages by reason of the alleged defect in the bridge. Plaintiff sustained no damages directly from such defect. In fact, it sustained no damages at all until after a hearing of Calder's claim for compensation, and then its liability to pay arose from its contract with the Concordia Creamery Company, that is, by its insurance policy. It is only by reasoning from cause to effect, and through intermediate parties, and over several months' time, that it can be said plaintiff sustained any loss or damage, and then it would not have done so had it not been for its contract of insurance. Calder served written notice on the director of highways of damages he claimed to have sustained, giving the time when, and the place where, and his name and post-office address, and the statement of the character of the damages sustained by him. There was no intimation in this notice that the plaintiff, or anyone else, had sustained any damages. Plaintiff at no time, either before or after it paid the sums which it seeks to recover in this action, gave any notice to the director of highways that it had been damaged in any respect, unless such notice can be said to have been given by the filing of the petition in this action. That was long after the date of the casualty in which Calder sustained personal injury.

When a statute gives certain persons the privilege of suing the state on certain causes of action the statute should not be enlarged by interpretation to include other persons or other causes of action. In *U. S. Casualty Co. v. State Highway Dept.*, 155 S. C. 77, 151 S. E. 887, it was held that a statute giving a person damaged by defects in the highway privilege to sue should not be enlarged so as to permit an action by the insurance carrier of the person damaged. In *Alava & Iturregui v. The People*, 20 Porto Rico 84, it was held that a statute which gave a right of action to every person whose property may have been unjustly or illegally destroyed or injured by the enforcement of any order made by the Sanitation Service should not be enlarged so as to authorize an action by a person whose property was not taken, injured or destroyed, but who claimed resultant damages because nearby property was so taken or destroyed. Other

cases bearing on the question are *Rose v. The Governor*, 24 Tex. 496, and *Raymond v. State*, 54 Miss. 562. Other cases on the point might be cited. This is really but a detail of the broader principle recognized in this state and elsewhere that when a state grants the privilege for certain classes of persons to sue the state on certain causes of action, the statute granting such privilege should be strictly construed so as not to enlarge the privilege granted.

From what has been said it necessarily follows that plaintiff's petition does not state a cause of action, and that the demurrer thereto was properly sustained.

The judgment of the court below is affirmed.