No. 51,306

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN, Attorney General, *Appellee and Cross-Appellant,* v. ROBERT THIESSEN, MEARLE D. MASON, JOHN E. PYLES and the CITY OF WICHITA, KANSAS, *Appellants.*

(612 P.2d 172)

Opinion filed June 14, 1980.

*Gary E. Rebenstorf,* assistant city attorney, argued the cause, and *John Dekker,* city attorney, was with him on the brief for the appellants.

*Bruce E. Miller,* deputy attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

MCFARLAND, J.: This is a mandamus action brought by the attorney general to compel the Wichita Municipal Court to impose and collect the assessments mandated by K.S.A. 1979 Supp. 74-5612 and 74-5613 for the support of the Kansas law enforcement training center. The action was commenced by former Attorney General Curt T. Schneider, with present Attorney General Robert T. Stephan being subsequently substituted therefor. The respondents raised various constitutional challenges to the statutes. The district court upheld the constitutionality of K.S.A. 1979 Supp. 74-5612, which requires a sliding scale of assessments be imposed in addition to any fines or bond forfeitures ordered. The district court held K.S.A. 1979 Supp. 74-5613, which requires that bail deposits include an amount sufficient to cover the K.S.A. 1979 Supp. 74-5612 assessment, was unconstitutional as bearing no reasonable relationship to the purpose of bail which is to insure the appearance of the accused at trial. The district court ordered that a writ of mandamus issue as to the imposition and collection of assessments required by K.S.A. 1979

Supp. 74-5612. The respondents appeal from the portion of the judgment upholding the validity of K.S.A. 1979 Supp. 74-5612 and petitioner cross-appeals from the portion of the judgment which struck down K.S.A. 1979 Supp. 74-5613.

The appeal and cross-appeal raise the following four basic issues:

1. Whether 1978 HB 3129, enacted as Chapter 323, Laws of 1978, contains two unrelated subjects in violation of Article 2, Section 16, of the Kansas Constitution;

2. Whether the assessment required to be imposed and collected by K.S.A. 1979 Supp. 74-5612 is an improper court cost;

3. Whether the assessment imposed by K.S.A. 1979 Supp. 74-5612 is, in actuality, an unconstitutional tax whose collection thereof by the courts violates the separation of powers doctrine; and

4. Whether K.S.A. 1979 Supp. 74-5613 constitutes the imposition of excessive bail and thereby is constitutionally defective.

We shall first consider whether 1978 HB 3129, enacted as Chapter 323, Laws of 1978, contains two unrelated subjects in violation of Article 2, Section 16, of the Kansas Constitution, which provides:

"No bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes. The subject of each bill shall be expressed in its title. No law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed. The provisions of this section shall be liberally construed to effectuate the acts of the legislature."

HB 3129, enacted as Chapter 323, Laws of 1978, contains fifteen sections, some of which are lengthy. In the interest of brevity, the bill will be summarized where possible.

"House Bill No. 3129
"AN ACT relating to crimes, authorizing certain release on recognizance and supervised release programs and procedures; amending and supplementing the Kansas law enforcement training center and advisory commission act; amending K.S.A. 74-5609 and K.S.A. 1977 Supp. 74-5602, 74-5604 and 74-5608 and repealing the existing sections.
*"Be it enacted by the Legislature of the State of Kansas:*
"New Section 1. (a) Each district court is hereby authorized to establish, operate and coordinate release on recognizance programs and supervised release programs to provide services to the court and to persons who are to be charged or are charged with crimes or who have been convicted of crimes. Release on recognizance programs and supervised release programs shall be administered by

probation officers and other personnel of the district court. Participation by defendants in such programs shall be on a voluntary basis. Nothing in sections 1 to 4, inclusive, shall affect the right of any person to seek or obtain release under K.S.A. 1977 Supp. 22-2802, as amended, regardless of participation or nonparticipation in release on recognizance programs or supervised release programs.

"(b) The provisions of this section shall take effect and be in force on and after July 1, 1979."

Sections 2, 3, and 4 deal exclusively with release on recognizance and supervised release programs, setting forth criteria limitations, procedures, etc.

Section 5 amends K.S.A. 1977 Supp. 74-5602 and defines terms used in connection with the Kansas law enforcement training center.

"Sec. 6. From and after July 1, 1979, K.S.A. 1977 Supp. 74-5604 shall be and is hereby amended to read as follows: 74-5604. The director shall establish a program for periodically extending the law enforcement training and instruction of the training center throughout the state on a regional basis. The director also shall certify annually the training schools of state and local law enforcement agencies providing a basic course of law enforcement training of not less than four hundred (400) hours of instruction, and whose training programs also satisfy the qualifications and standards promulgated by the director after consultation with the commission. In addition, on or after November 20 of each even-numbered year and prior to January 1 of the next succeeding year, and at such other times as the director deems necessary, the director shall provide a training course for persons elected to the office of sheriff at the preceding general election and for undersheriffs and deputy sheriffs.

"Sec. 7. From and after July 1, 1979, K.S.A. 1977 Supp. 74-5608 shall be and is hereby amended to read as follows: 74-5608. (a) No person shall receive a permanent appointment as a police officer or law enforcement officer, unless such officer has been awarded a certificate attesting to satisfactory completion of a basic course of not less than four hundred (400) hours of accredited instruction at the training center or at a training school certified in accordance with the provisions of K.S.A. 1977 Supp. 74-5604 and amendments thereto, has been awarded such a certificate for not less than the number of hours of instruction required by this act at the time such certificate was issued or received a permanent appointment as a police officer or law enforcement officer prior to July 1, 1969.

"(b) Every person who does not hold a certificate required by subsection (a), and is elected or appointed as a law enforcement officer, shall be elected or appointed to his or her position on a temporary basis and, within one (1) year of this temporary election or appointment, must become certified, as provided in the preceding subsection, or forfeit his or her office or position."

Section 8 authorizes the law enforcement training center to charge tuition.

"New Sec. 9. [Codified as K.S.A. 1979 Supp. 74-5612, one of the statutes specifically challenged herein] (a) Whenever an officer of any court of this state or

any municipal court shall impose a fine or order a bail forfeiture as a penalty for a violation of any of the laws of this state, ordinances of a city or resolutions of a county, such officer shall also impose and collect an assessment in addition to such fine or forfeiture. Such officer shall remit all moneys received from such assessments to the state treasurer at least monthly. Upon receipt thereof, the state treasurer shall deposit the entire amount in the state treasury and credit the same to the law enforcement training center fund created by this act.

"(b) Assessments imposed pursuant to the provisions of this act shall be in amounts as follows:

"(1) When a fine or forfeiture is five dollars ($5) or more but less than fifteen ($15), the assessment shall be one dollar ($1);

"(2) when the fine or forfeiture is fifteen dollars ($15) or more but less than fifty dollars ($50), the assessment shall be two dollars ($2);

"(3) when the fine or forfeiture is fifty dollars ($50) or more but less than one hundred ($100), the assessment shall be three dollars ($3); and

"(4) when the fine or forfeiture is one hundred dollars ($100) or more, the assessment shall be five dollars ($5).

"(c) No assessment shall be imposed pursuant to this section for the violation of any ordinance or resolution relating to unlawful parking or abandoning of a motor vehicle.

"New Sec. 10. [Codified as K.S.A. 1979 Supp. 74-5613, the other statute specifically challenged herein] Whenever a deposit of bail is required for any offense to which this act applies, the person making such deposit shall also deposit a sufficient amount to include the assessment prescribed under section 9. If such bail is forfeited the assessment shall be forwarded to the state treasurer as provided in section 9. Whenever any bail is returned to the person depositing the same, the assessment shall also be returned.

"New Sec. 11. (a) There is hereby created the law enforcement training center fund. All moneys credited to such fund under the provisions of this act or any other law shall be expended only for the purposes and in the manner prescribed by law.

"(b) Expenditures from the law enforcement training center fund shall be made in accordance with appropriation acts upon warrants of the director of accounts and reports issued pursuant to vouchers approved by the director. Not less than fifteen percent (15%) of the moneys in such fund shall be used to reimburse counties and cities for the costs of temporary replacement of law enforcement officers while in attendance at the training center or training schools certified pursuant to K.S.A. 1977 Supp. 74-5604 and amendments thereto. The balance of such moneys shall be used exclusively (1) to defray the costs of operation of the training center and (2) for grants to training schools certified by the director pursuant to K.S.A. 1977 Supp. 74-5604 and amendments thereto, to be used by such schools to defray the costs of operation thereof.

"(c) On or before May 1 of each year, the head of each training school certified by the director pursuant to K.S.A. 1977 Supp. 74-5604 and amendments thereto shall certify to the director the number of persons who were awarded a certificate of satisfactory completion of the training program of such school during the preceding calendar year. Any moneys expended from the law enforcement training center fund for grants to such schools shall be distributed to each school in the

ratio that the number of persons awarded a certificate by such school in the preceding calendar year bears to the total number of persons awarded certificates by all such schools in the preceding calendar year.

"(d) On or before May 1 of each year, each county or city clerk shall certify to the director the number of law enforcement officers of the county or city who, during the preceding calendar year, were awarded certificates of satisfactory completion of the basic course of instruction at the training center or training schools certified pursuant to K.S.A. 1977 Supp. 74-5604 and amendments thereto. Any moneys expended from the law enforcement training center fund to reimburse counties and cities for the costs of temporary replacement of law enforcement officers while in attendance at such training center or schools shall be distributed to each county or city in the ratio that the number of law enforcement officers of such county or city awarded certificates by such training center and schools in the preceding calendar year bears to the total number of law enforcement officers of all counties and cities awarded certificates by such training center and schools in the preceding calendar year. Any moneys so distributed to a county or city shall be remitted to the treasurer of the county or city for deposit in the fund of the county or city from which wages or salaries of law enforcement officers of the county or city are paid.

"Sec. 12. Sections 9, 10 and 11 shall be a part of and supplemental to the Kansas law enforcement training center and advisory commission act.

"Sec. 13. K.S.A. 74-5609 is hereby repealed.

"Sec. 14. From and after July 1, 1979, K.S.A. 1977 Supp. 74-5604 and 74-5608 shall be and are hereby repealed.

"Sec. 15. This act shall take effect and be in force from and after its publication in the statute book."

It is readily apparent that Sections 1 through 4 deal exclusively with release on recognizance and supervised release programs and procedures. The balance of the act deals exclusively with the Kansas law enforcement training center and its funding.

Initially, these two areas were the subjects of separate bills. Original HB 3129 was concerned only with release programs and procedures, as shown by its original title:

"AN ACT relating to criminal procedure; authorizing certain release on recognizance and supervised release programs and procedures; amending K.S.A. 1977 Supp. 22-2802 and repealing the existing section."

The provisions relative to the Kansas law enforcement training center originated in Substitute HB 2984, which was titled:

"AN ACT amending and supplementing the Kansas law enforcement training center and advisory commission act; amending K.S.A. 1977 Supp. 74-5602, 74-5604 and 74-5608 and repealing the existing sections."

Said bill was voted down by the Senate on March 30, 1978. Subsequently, provisions of both bills were merged and the new title, repeated for easy reference, reflected the merger as follows:

"AN ACT relating to crimes, authorizing certain release on recognizance and supervised release programs and procedures; amending and supplementing the Kansas law enforcement training center and advisory commission act; amending K.S.A. 74-5609 and K.S.A. 1977 Supp. 74-5602, 74-5604 and 74-5608 and repealing the existing sections."

On April 15, 1978, Governor Robert F. Bennett forwarded HB 3129 to the secretary of state without signature and sent the following message to the legislature:

"MESSAGE TO THE HOUSE OF REPRESENTATIVES OF THE STATE OF KANSAS:

"House Bill 3129 is being delivered this date to the Secretary of State unsigned for the following reasons:

"House Bill 3129 grants discretionary authority to the District Courts of this state to establish, operate and coordinate 'release on recognizance programs and supervised release programs' for persons charged or convicted of crimes. To a large extent, these provisions represent a codification and clarification of existing judicial authority, both expressed and implied. This portion of House Bill 3129 gives needed statutory profile to release programs which can be made available by our district courts in the exercise of their sound discretion. Under such circumstances and assuming that the discretion will be exercised with caution and with wisdom, the proposal is deserving of support.

"As House Bill 3129 moved through the legislative process and near the end of that process and near the end of this session a totally different subject was attached to it by amendment relating to law enforcement training. This new proposal increases the number of hours which are required of persons involved in law enforcement and provides additional funding for the training program by increasing court costs in all criminal cases other than those involving unlawful parking or the abandonment of motor vehicles. The amendment of this new matter into the bill is another example of the ever increasing use of the floor amendment to either materially change an original purpose of a bill or to add to a proposal new material which is not germane to its original and basic substance. At best, the procedure is less than desirable and has a tendency to subvert the orderly legislative process, not only by avoiding steps in that process which are appropriate to the refinement of a legislative proposal, but also by limiting the voting options of members of the Legislature as well as the executive options constitutionally granted to the governor.

"House Bill 3129, as it was finally presented to me, is a good example of the combination of two separate subjects, one strongly supported and one strongly opposed, in an effort to force through by rider a proposal which had difficulty in passage on its own merits. The original proposal was supported with near unanimity. When the new proposal was added, the vote in both houses became badly divided, leaving to conjecture whether or not the new proposal could have been passed on its own merits or whether it received its support only as the result of the procedure used. I am of the strong opinion that the interests of the people are better served when both the Legislature and the Governor are

allowed to make clear-cut decisions as opposed to the 'either/or' judgment required and typified in this bill.

"The increase in the number of hours required for the training of law enforcement officers is well justified in our quest for the control of crime, particularly if that training is properly and effectively developed to improve the capability of these officers to do a better job in the enforcement of today's law and municipal ordinances. The bill raises a question, however, as to how effective our current program might be and as to what new training will be provided over and above that which is currently available. While I support increased training and improvement of the capabilities of our law enforcement officers, I strongly feel that this proposal should have followed a detailed study on that subject rather than preceded it.

"Additionally, though efforts are made to ameliorate the fiscal effect of the bill on law enforcement agencies, there is a serious question in my mind as to whether or not that has in fact been accomplished. Considering the burden currently placed on local property taxpayers to support programs such as this, it is imperative that the state, in one form or another, assume the cost of these new mandates. That assumption is not clearly shown and demonstrated in the provisions of House Bill 3129.

"The forthcoming legislative interim should be used for a complete analysis and study of our law enforcement training program, including the coordination thereof between the various units now providing training to those engaged in this activity. It should also be used for an analysis of the costs that are involved in the mandate contained in this bill so that when this Legislature next meets it can adequately fund that which it now requires.

"The blending in this bill of two totally different subjects, one with reference to recognizance and release procedures and the other with reference to law enforcement training, joined only by the broad phrase 'relating to crime,' raises a constitutional question as to whether or not this bill contains two subjects. As I have indicated in previous messages, however, that question should be determined by the court and not by the Governor or by the Legislature.

"For the reasons aforesaid, I am forwarding House Bill 3129 to the Secretary of State without my signature.

"Robert F. Bennett<br>
Governor of Kansas

"Dated: April 15, 1978"

In *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 622, 549 P.2d 864 (1976), this court stated that the purposes of the one subject in a bill requirement of Article 2, Section 16, were:

"  . . .  the prevention of a matter of legislative merit from being tied to an unworthy matter, the prevention of hodge-podge or log-rolling legislation, the prevention of surreptitious legislation, and the lessening of improper influences which may result from intermixing objects of legislation in the same act which have no relation to each other."

The most thorough discussion of Article 2, Section 16, is found

in *State v. Barrett,* 27 Kan. 213 (1882), wherein this court stated in Syl. ¶ ¶ 3-10:

"In order to correctly interpret that provision of § 16, article 2 of the constitution, which provides that 'No bill shall contain more than one subject, which shall be clearly expressed in its title,' its object must be taken into consideration; and the provision must not be construed or enforced in any narrow or technical spirit, but must be construed liberally on the one side, so as to guard against the abuse intended to be prevented by it, and liberally on the other side, so as not to embarrass or obstruct needed legislation."

"Under this provision of the constitution, the title of an act may be as broad and comprehensive as the legislature may choose to make it; or it may be as narrow and restricted as the legislature may choose to make it. It may be so broad and comprehensive as to include innumerable minor subjects, provided all these minor subjects are capable of being so combined and united as to form only one grand and comprehensive subject; or it may be so narrow and restricted as to include only the smallest and minutest subject."

"And while the title to an act may include more than one subject, provided all can be so united and combined as to form only one single, entire, but more extended subject; yet, neither the title to the act nor the act itself can contain more than one subject, unless all the subjects which it contains can be so united and combined as to form only one single subject."

"In construing the title to an act as well as the act itself, reference must be had to the object of the act, and to the evil sought to be remedied by it."

"It is not necessary that the title to an act should be a synopsis or abstract of the entire act in all its details; it is sufficient if the title indicates clearly, though in general terms, the scope of the act."

"Where a section of an act is assailed as being in contravention of said provision of § 16, article 2 of the constitution, it is sufficient if it is germane to the single subject expressed in the title and included therein, provided the act itself does not contain more than this single subject."

"Where the title to an act is not broad enough to include everything contained in the act, that which is not included within the title must be held to be invalid, for such is evidently the manifest intention of the constitution; and the courts have no power to enlarge or extend or amplify the title to the act, any more than they have to enlarge or diminish or modify or change the act itself."

"Where an act contains two separate and independent subjects, having no connection with each other, and the title to the act is broad enough to cover both, *held,* that probably, as a general rule, the act is unconstitutional and void."

Although *Barrett* is an old case it still accurately states the relevant law of Kansas.

Sections 1 through 4 of HB 3129 are exclusively concerned with certain aspects of criminal procedure. The balance of the bill is concerned with the Kansas law enforcement training center. These are two separate subjects which cannot lawfully be united under the broad title "crimes." Significantly, no crimes are defined in the act and no provision in the act amends or alters the

Kansas Criminal Code which is located in Chapter 21 of the Kansas statutes. Having determined that HB 3129 contains more than one subject, we must conclude that the bill is violative of Article 2, Section 16, of the Kansas Constitution; hence, it is invalid in its entirety. Accordingly, the trial court erred in issuing a writ of mandamus compelling compliance with K.S.A. 1979 Supp. 74-5612.

By virtue of this result there is no need to consider the other issues raised on appeal and cross-appeal.

Before concluding, we must consider the effect of the determination that HB 3129 is invalid on the statutes the bill amended. K.S.A. 1977 Supp. 74-5602 was subsequently amended by the same 1978 legislature (Chapter 324, Laws of 1978) and, accordingly, is unaffected by this decision. The statutes repealed by HB 3129 were integral parts of the Kansas law enforcement training center program. The bill provided substitute provisions therefor.

In *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 542 P.2d 278 (1975), this court considered the effect of an act, later held unconstitutional, which purported to amend and repeal existing statutes. The court approved and applied the following statement from *City of Kansas City v. Robb,* 164 Kan. 577, Syl. ¶ 2, 190 P.2d 398 (1948):

" 'Where a legislative act expressly repealing an existing statute, and providing a substitute therefor, is invalid, the repealing clause is also invalid unless it appears that the legislature would have passed the repealing clause even if it had not provided a substitute for the statute repealed.' " p. 45.

The changes made by HB 3129, relative to the Kansas law enforcement training center, deal primarily with its funding. We cannot conclude that the legislature would have passed the repealing clauses if it had not provided substitutes for such statutes. Under such circumstances, the repealing clauses are also invalid.

The judgment is reversed in part and affirmed in part.

HOLMES, J., not participating.