No. 52,863

JON S. WHEAT, D.D.S., on behalf of himself and all others similarly situated, *Appellant,* v. JOAN FINNEY, State Treasurer for the State of Kansas, *Appellee.*

(630 P.2d 1160)

Opinion filed July 17, 1981.

*Ted R. Morgan,* of Lakin, argued the cause and *Robert J. Frederick,* also of Lakin, was with him on the brief for the appellant.

*Dan Biles,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This action arises in the aftermath of *State ex rel. Stephan v. Thiessen,* 228 Kan. 136, 612 P.2d 172 (1980), in which the law imposing assessments mandated by K.S.A. 1979 Supp. 74-5612 and 74-5613 for the support of the Kansas Law Enforcement Training Center was held to be unconstitutional. The law was made effective July 1, 1978, and was declared unconstitutional by this court on June 14, 1980. The plaintiff filed the present action on behalf of himself and all others similarly situated to recover all sums received by the State Treasurer and placed in the Kansas Law Enforcement Training Center fund.

Some of the present provisions of the Kansas Law Enforcement Training Center and Advisory Commission Act were not overturned by the above decision. The provisions affected were those providing for $1.00 to $5.00 assessments to be collected by state and municipal courts by adding the same to each fine and forfeiture levied by those courts. The moneys were collected and remitted to the State Treasurer at least monthly, and by her deposited in the state treasury. When the provisions of the Act were declared unconstitutional, the Supreme Court issued Administrative Order No. 25 advising all such courts in the State to discontinue further assessments. The plaintiff's action seeks to recover from the State Treasurer all those assessments paid into the state treasury between July 1, 1978, and June 14, 1980.

Recovery is sought on two theories: (1) wrongful conversion by the State Treasurer, and (2) implied contract to prevent unjust enrichment and injustice. Plaintiff in his brief states that the State collected over $1,763,000.00 in assessments during this two year period and should be required to account for the same. The legislature has appropriated most of the amounts collected for the purposes provided for in the Act.

The defendant, State Treasurer, filed a motion to dismiss the action on the ground that the State Treasurer was not a proper party, and on the further ground the plaintiff failed to state a claim on which relief can be granted. The district judge dismissed the plaintiff's petition for failure to state a claim on which relief can be granted. He did not consider the question of whether the State Treasurer was a proper party to the action.

Plaintiff urges two theories of recovery. First, we will consider plaintiff's theory of wrongful conversion, a tort claim. Kansas has a long history of sovereign immunity from suit. The doctrine of absolute sovereign immunity which was first recognized and adopted in this State in *Eikenberry v. Township of Bazaar,* 22 Kan. 556 (1879), has been gradually whittled away. In *Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21 (1969), all governmental agencies were determined to be liable for negligence in carrying out proprietary functions. The court in *Carroll* noted that it had been suggested to the legislature that the extent to which sovereign immunity should be limited was within the province of the legislature. The legislature responded within a year by passing a

governmental immunity statute which now affects a portion of plaintiff's cause of action.

In 1970, K.S.A. 46-901 was passed providing:

"(a) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, except as is otherwise specifically provided by statute:

"(1) The state of Kansas; and

"(2) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; and

"(3) all committees, assemblies, groups, by whatever designation, authorized by constitution or statute to act on behalf of or for the state of Kansas.

"(b) The immunities established by this section shall apply to all the members of the classes described, whether the same are in existence on the effective date of this act or become members of any such class after the effective date of this act."

This statute remained in effect until July 1, 1979, when it was repealed. L. 1979, ch. 186, § 33. In its stead was passed the Kansas Tort Claims Act, K.S.A. 1980 Supp. 75-6101 *et seq.*, which limits liability of the State in certain areas.

As to plaintiff's claim based on the theory of wrongful conversion, from July 1, 1978, until June 30, 1979, K.S.A. 46-901 declared the State of Kansas and all departments and institutions of the State of Kansas immune from liability and suit on an implied contract, or for negligence or "any other tort." For the period above referred to the statute imposes a complete bar to the plaintiff's claim for wrongful conversion.

The constitutionality of K.S.A. 46-901 was upheld in *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 (1976); *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 552 P.2d 885 (1976); *Whitmire v. Jewell,* 223 Kan. 67, 573 P.2d 573 (1977); *Wilson v. Probst,* 224 Kan. 459, 460, 581 P.2d 380 (1978).

On July 1, 1979, when K.S.A. 46-901 was repealed, the Kansas Tort Claims Act, K.S.A. 1980 Supp. 75-6101 *et seq.,* became effective. It is made applicable to claims arising from acts or omissions occurring after July 1, 1979, and provides certain immunities to the State from liability. K.S.A. 1980 Supp. 75-6104 provides:

"A governmental entity or an employee acting within the scope of his or her employment shall not be liable for damages resulting from:

. . . .

"(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution;

. . . .
"(*e*) the assessment or collection of taxes or special assessments."

So any tort claim for wrongful conversion against the State, its officers and agencies was barred for the entire period. K.S.A. 46-901 provided immunity to the State from July 1, 1978, to June 30, 1979, and K.S.A. 1980 Supp. 75-6104(*c*) and (*e*) provided immunity to the State from July 1, 1979, until the law enforcement training assessments were discontinued. Plaintiff's claim of wrongful conversion failed to state a cause on which relief could be granted.

We turn next to plaintiff's second theory, a claim based on implied contract to prevent unjust enrichment and injustice. Restitution and unjust enrichment are modern designations for the older doctrine of quasi-contracts. The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him. *Minnesota Avenue, Inc. v. Automatic Packagers, Inc.,* 211 Kan. 461, 464, 465, 507 P.2d 268 (1973); *United States Fidelity & Guaranty Co. v. Marshall,* 4 Kan. App. 2d 9, 10, 601 P.2d 1169 (1979).

As previously pointed out the provisions of K.S.A. 46-901 established the bar of immunity from suit not only for actions in tort but also for actions on implied contract. See K.S.A. 46-901(*a*) as previously quoted. This statute foreclosed the plaintiff's theory of suit based on implied contract for the period from July 1, 1978, to June 30, 1979.

As to the period from July 1, 1979, to the date these assessments were discontinued our attention is called to the provisions of K.S.A. 1980 Supp. 46-903, which reads:

"No money or funds shall be disbursed from the state treasury or any special fund of the state of Kansas in part or full satisfaction or payment of any claim or judgment based in whole or in part on an implied contract, unless the payment of such claim or judgment has been specifically authorized by act of the legislature."

This statute became effective July 1, 1979, and was part of a package of laws which became effective on the repeal of K.S.A. 46-901, which had previously granted immunity from suit to the State and its agencies. We note the statute imposes a condition precedent to disbursement of funds from the state treasury in payment of any claim or judgment based on implied contract—

disbursement must be specifically authorized by act of the legislature.

Supplementing this provision, the legislature has provided for a special claims committee and K.S.A. 1980 Supp. 46-907 provides:

"All claims proposed to be paid from the state treasury or any special fund of the state of Kansas, which cannot be lawfully paid by the state or any agency thereof except by an appropriation of the legislature shall be submitted to the joint committee on special claims against the state before final action thereon is taken by either house of the legislature."

The statutes, K.S.A. 1980 Supp. 46-912 through 46-919, provide for the appointment of members of the special claims committee and provide procedural guidelines to be followed in considering claims and making recommendations to the legislature. Of the twelve members of the committee, five are required to be attorneys licensed to practice law in Kansas. Neither the plaintiff nor any member of the class which plaintiff presumes to represent has submitted to the special claims committee a claim for refund of the illegal assessments paid by them.

It is a general rule that an action against a state or a state officer may not be maintained unless all prescribed conditions precedent have been fully performed. *American Mut. Liability Ins. Co. v. State Highway Comm.,* 146 Kan. 239, 243, 69 P.2d 1091 (1937). The theory on which this rule is based was stated in the above case as follows:

"It is a fundamental principle, well settled in the law of this state and generally elsewhere, that the state is regarded as a sovereign governmental body and as such cannot be sued in its own courts by individuals or private corporations, except to the extent it has given its consent thereto. In this state such consent must be given by an act of the legislature. It is also well settled that since the right of action by an individual or private corporation against the state may be granted or withheld at the pleasure of the state, acting through its legislature, such permission may be granted with respect to certain causes of action only, and with respect to certain claimants only, and also may provide conditions precedent to the bringing of such an action and the limitation of time in which they must be brought." 146 Kan. at 243.

K.S.A. 1980 Supp. 46-903 and 46-907 provide a statutory requirement that claims based on implied contracts be filed with a special claims committee; such filing and processing are held to be conditions precedent to the maintenance of an action. An action may not be maintained against the State without first filing a claim on which payment is denied. See 81A C.J.S., States § 310

for a discussion of conditions precedent to actions against the State. In the case at bar, since no attempt was made to comply with the requirements of K.S.A. 1980 Supp. 46-903 and 46-907, the plaintiff is precluded from maintaining an action based on implied contract to recover illegal assessments collected under the Kansas Law Enforcement Training Center and Advisory Commission Act.

One final matter should be mentioned. The parties in their briefs have focused on the case of *Panhandle Eastern Pipe Line Co. v. Fadely,* 189 Kan. 283, 369 P.2d 356 (1962). The defendant contends it controls the present action; the plaintiff attempts to distinguish the case. It was on the basis of the holding in this case the trial court dismissed the plaintiff's petition. We do not consider the case controlling. It was a mandamus action seeking an order to direct the State Treasurer and Director of Revenue to refund some $36,000.00 to two taxpayers.

The State had collected this amount in illegal severance taxes on oil and gas. The act by which the collections were made had been declared unconstitutional. Considering Article 2, § 24 of the Constitution of the State of Kansas as it then appeared, this court in *Panhandle* held the constitutional provision to be an insurmountable problem. In 1962 that section of the Constitution provided:

"No money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and no appropriation shall be for a longer term than two years."

The moneys collected had been paid into the general fund of the State. The court in *Panhandle* held:

"[W]e are compelled to conclude that plaintiff, by an action in mandamus (G.S. 1949, 60-1702, *et seq.*), cannot recover back the taxes it paid under protest notwithstanding the fact the law under which such taxes were paid was declared unconstitutional." 189 Kan. at 287.

Mandamus is a proceeding to compel some person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law. K.S.A. 60-801. Mandamus could not be utilized in *Panhandle* to require the State Treasurer and the Director of Revenue to violate the provisions of Article 2, § 24 of the State Constitution. This section specifically provided that no money shall be withdrawn from the state treasury except in pursuance of

a specific appropriation by law which required legislative action. Mandamus was the wrong remedy to use in such a case. The present action is not one in mandamus. Therefore, the *Panhandle* case is not determinative of the present action.

Because of our decision, we, like the trial court, do not consider the question of whether the defendant was the proper party to this action. The judgment of the district court dismissing the plaintiff's petition for failure to state a claim upon which relief can be granted is affirmed.