No. 63,066

REX A. SHARP, KERRY MCQUEEN, and JAMES H. MORAIN, as individuals, NEUBAUER, SHARP, MCQUEEN, DREILING & MORAIN, P.A., as a firm, and All Other Lawyers as a Class Required by the State of Kansas to Represent Kansas Indigent Criminal Defendants, *Plaintiffs-Appellants*, v. STATE OF KANSAS, *Defendant-Appellee*.

(783 P.2d 343)

Opinion filed December 8, 1989.

*Rex A. Sharp*, of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for the appellants.

*John W. Campbell*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, C.J.: This is a class action for damages filed by plaintiffs, lawyers practicing in Liberal, Kansas, for themselves and as representative of all lawyers who were required to represent indigent criminal defendants in this state prior to July 1, 1988, under the Indigent Defense Services Act, K.S.A. 1986 Supp. 22-4501 *et seq.*, and the rules and regulations promulgated thereunder. The district court granted the State's motion for summary judgment, and plaintiffs appeal. We affirm.

The issues are whether the petition states a claim upon which relief can be granted against the State of Kansas under (1) 42 U.S.C. § 1983 (1982); (2) 42 U.S.C. § 1985 (1982); (3) 42 U.S.C. § 1994 (1982), or the Thirteenth Amendment's prohibition of involuntary servitude; (4) the theory of inverse condemnation;

(5) the theory of unjust enrichment; or (6) the theory of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971).

## BACKGROUND

This action was commenced following the announcement of our decision in *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816 (1987). In *Smith*, we held unconstitutional the system then in place for appointing and reimbursing private attorneys for representing indigent criminal defendants in this state pursuant to the Indigent Defense Services Act, K.S.A. 22-4501 *et seq.*, and the regulations promulgated thereunder, K.A.R. 105-1-1 *et seq.* In conclusion, we said:

"The State of Kansas has the obligation to furnish counsel for indigents charged with felonies [and certain others]. The State also has an obligation to pay appointed counsel such sums as will fairly compensate the attorney, not at the top rate an attorney might charge, but at a rate which is not confiscatory, considering overhead and expenses. . . .

"Kansas attorneys have an ethical obligation to provide pro bono services for indigents, but the legal obligation rests on the state, not upon the bar as a whole or upon a select few members of the profession.

"The present system as now operated . . . violates certain provisions of the United States and the Kansas Constitutions. Changes are required. These may come about by both legislative and administrative action. [Such change] takes time. Meanwhile, the indigent criminal defendants must have counsel, and that is a burden which the bar must continue to shoulder, at least temporarily, under the present system." 242 Kan. at 383.

We proceeded to direct the parties to continue under the then existing system from the date on which our opinion was filed, December 15, 1987, until July 1, 1988. By that date, changes were made in statutory law and in the regulations, and plaintiffs do not attack the system which has been in operation since July 1, 1988.

A district court is justified in dismissing an action where the allegations in the petition clearly demonstrate that the plaintiff does not have a claim. *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 2, 479 P.2d 875 (1971). We now turn to the issues presented.

## 42 U.S.C. § 1983

The first issue is whether relief is available to plaintiffs under 42 U.S.C. § 1983. It provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

We have held that the State of Kansas has not waived its sovereign immunity in suits seeking monetary damages under 42 U.S.C. § 1983. See *Beck v. Kansas Adult Authority*, 241 Kan. 13, 21, 735 P.2d 222 (1987). More importantly, however, the United States Supreme Court has recently decided, subsequent to the filing of this case, that a State is not a "person" within the meaning of § 1983, and thus not subject to suit under the statute. *Will v. Michigan Dept. of State Police*, ___U.S. ___, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). Under *Will*, no relief is available to the plaintiffs under 42 U.S.C. § 1983.

## 42 U.S.C. § 1985(3)

The second issue is whether relief is available to plaintiffs under 42 U.S.C. § 1985(3), which provides in part:

"If two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, . . . the party so injured . . . may have an action for the recovery of damages occasioned by such injury or deprivation . . . ."

Although we have not directly addressed the question of whether damages may be recovered from the State under 42 U.S.C. § 1985(3), the logic of both *Beck* and *Will* dictates that they may not. Several jurisdictions addressing the question have held that the State is not a "person" under that statute. See, *e.g.*, *Coffin v. South Carolina Dept. of Social Services*, 562 F. Supp. 579, 585 (D.S.C. 1983). *Will* confirms those decisions. We hold that relief is not available under this section.

## 42 U.S.C. § 1994 AND THE THIRTEENTH AMENDMENT

The third issue is whether damages may be recovered by the plaintiffs under 42 U.S.C. § 1994, which provides:

"The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, . . . regulations, or usages of any

Territory or State, which have heretofore established, . . . or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any person as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void."

The purpose of 42 U.S.C. § 1994 is to enforce the Thirteenth Amendment. *United States v. Reynolds*, 235 U.S. 133, 59 L. Ed. 162, 35 S. Ct. 86 (1914). Section 1 of the Amendment provides:

"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

We discussed the Thirteenth Amendment issue in *Smith*, 242 Kan. at 378, and held that the appointment system for which the plaintiffs now claim damages does not violate the Thirteenth Amendment. Plaintiffs argue that we erred in our holding on this issue and that our analysis is outdated. They protest our reliance upon Shapiro, *The Enigma of the Lawyer's Duty to Serve*, 55 N.Y.U. L. Rev. 735, 768, 770 (1980), which they argue presents a narrow interpretation of the Thirteenth Amendment following *United States v. Shackney*, 333 F.2d 475, 485-87 (2d Cir. 1964). *Shackney's* interpretation was rejected by the Ninth Circuit in *United States v. Mussry*, 726 F.2d 1448 (9th Cir. 1984). *Mussry* was a criminal case in which the indictment and bill of particulars charged "that the defendants unlawfully held poor, non-English speaking Indonesian servants against their will by enticing them to travel to the United States, paying them little money for their services, and withholding their passports and return airline tickets, while requiring them to work off, as servants, the debts resulting from the cost of their transportation." 726 F.2d at 1450.

Plaintiffs also rely upon *United States v. Kozminski*, 487 U.S. 931, 101 L. Ed. 2d 788, 108 S. Ct. 2751 (1988). *Kozminski* is a criminal case involving different federal statutes. *Kozminski* involved an appeal by a farm family which was convicted of holding two mentally retarded men in involuntary servitude. The Court rejected the broad definition of involuntary servitude advocated by the prosecution and found a narrow interpretation was appropriate under the circumstances of the case.

Neither *Mussry* nor *Kozminski* convinces us that we erred in *Smith*. The *Kozminski* court noted that "the prohibition against

involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties," and that "the Thirteenth Amendment was not intended to apply to 'exceptional' cases well established in the common law at the time of the Thirteenth Amendment." 487 U.S. at 943-44. In *Board of Osage County Comm'rs v. Burns*, 242 Kan. 544, 546-48, 747 P.2d 1338 (1988), we discussed the history of appointed counsel in Kansas. Attorneys were required to serve without compensation as counsel for indigent defendants accused of felonies from statehood until 1941. The power of the courts to require service of attorneys when necessary to meet the ends of justice is well established at common law. Generally speaking, indigents charged with felony offenses cannot legally be tried unless provided with counsel. Courts have a duty to see that criminal cases are legally and properly tried. Courts must therefore have the power to appoint counsel. See *Powell v. Alabama*, 287 U.S. 45, 73, 77 L. Ed. 158, 53 S. Ct. 55 (1932); *Jackson v. State*, 413 P.2d 488 (Alaska 1966); *Knox County Council v. State ex rel. McCormick*, 217 Ind. 493, 29 N.E.2d 405, (1940); *Clark v. Ivy*, 240 Kan. 195, 727 P.2d 493 (1986). We adhere to our decision in *Smith* and hold that relief is not available to plaintiffs under 42 U.S.C. § 1994 or the Thirteenth Amendment.

## INVERSE CONDEMNATION

The fourth issue is whether plaintiffs may recover under the theory of inverse condemnation. While the other claims were spelled out in the petition filed in this case, we find no mention of inverse condemnation. Additionally, this theory was not presented to the trial court. A legal theory may not be asserted for the first time on appeal. *Landrum v. Taylor*, 217 Kan. 113, 120, 535 P.2d 406 (1975).

Even were we to consider this theory, we find no case in which we have applied inverse condemnation to the taking of services. Condemnation and inverse condemnation ordinarily involve a taking of real property without the owner's consent. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 124, 671 P.2d 511 (1983). It appears to be an inappropriate vehicle, in light of all of the usual and existing theories upon

which recovery may be based, and we decline to extend it to the claims asserted here.

## UNJUST ENRICHMENT

The fifth issue is whether plaintiffs have a claim under the theory of unjust enrichment. A claim for unjust enrichment is in substance an action in implied contract, and, under K.S.A. 46-903 and K.S.A. 46-907, such a claim may not be maintained against the State unless plaintiffs have previously filed a claim on which payment has been denied. *Wheat v. Finney*, 230 Kan. 217, 630 P.2d 1160 (1981). Plaintiffs contend that they have met this rule by having filed: (1) a case in federal court; (2) this case in state court; and (3) a claim with the Joint Committee on Special Claims Against the State a month or more after this action was commenced. These filings do not meet the required *precedent* attempts at administrative resolution. The issue is thus without merit.

## *BIVENS* ACTION

The sixth and final issue is whether plaintiffs have stated a claim under the theory of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388. *Bivens* is an unusual action in which the United States Supreme Court held that the plaintiff had stated a federal damage claim directly under the Fourth Amendment, although no federal statute authorized his action. Federal courts have not allowed *Bivens* actions against the states. See *Vakas v. Rodriquez*, 728 F.2d 1293 (10th Cir.), *cert. denied* 469 U.S. 981 (1984); *Colon Berrios v. Hernandez Agosto*, 716 F.2d 85 (1st Cir. 1983); and *Phelps v. Wichita Eagle-Beacon*, 632 F. Supp. 1164 (D. Kan. 1986). The United States Supreme Court has limited nonstatutory damage actions brought under the *Bivens* theory and cautions against judicial action in expanding available remedies absent statutory mandate. See *Bush v. Lucas*, 462 U.S. 367, 76 L. Ed. 2d 648, 103 S. Ct. 2404 (1983); *Chappell v. Wallace*, 462 U.S. 296, 76 L. Ed. 2d 586, 103 S. Ct. 2362 (1983); *Vakas*, 728 F.2d at 1296. Plaintiffs seek to distinguish these cases on various grounds, but the arguments are not persuasive. We see no reason to recognize such an action against the State in this case.

In *Smith*, we found that the inequities under the old system of appointment and limited remuneration had reached such a

point as to offend constitutional rights. We directed that the system be changed within a very short period of time, and the change has occurred. We have found no case, and none has been cited, which mandates the award of monetary damages in such a case in addition to equitable relief. We conclude that the district court did not err when it granted summary judgment.

The judgment is affirmed.

SIX, J., not participating.