No. 20,144.

FRIEDERICKA GEFFERT AND HENRY GEFFERT, *Appellants*, v. ADOLPH C. GEFFERT et al., *Appellees*.

SYLLABUS BY THE COURT.

1. CONTRACT—*Purchase of Land—Forfeiture for Default—When Equity Will Not Enforce Forfeiture*. Rule followed that a court of equity will not enforce a forfeiture where circumstances permit it to decline to do so and where the substantial rights of the parties demanding the forfeiture can otherwise be adequately protected and compensated.

2. SAME—*Deed from Parents to Son—Forfeiture for Default of Annual Payments—Equity*. The plaintiffs owned a section of land. As they grew old and feeble and the management of their lands became a burden to them, they conveyed their land to their four sons, a quarter section to each. Each deed contained the following provision:

> "The party of the second part shall pay the parties of the first part the sum of Two Hundred Dollars ($200.00) per annum as follows: Two Hundred Dollars ($200.00) to be paid on the first day of May, 1908 and a like sum to be paid on the first day of May in each succeeding year during the lifetime of the said parties of the first part or either of them. . . . Should the said party of the second part fail to make payments as above set forth or fail to pay all taxes, or taxes that may be levied against the said land for a period of one year after the said payments shall become due, the premises herein granted shall revert to and become the property of the said parties of first part." .

The sons paid the annuities at their convenience, with the acquiescence of their parents. One son gave his note for $500 to settle delinquent annuities, and paid $130 to apply on a current annuity, which sum his mother applied on his note instead. These and related circumstances considered, and held sufficient to withhold a decree of absolute forfeiture of the grant to him by his parents; and the judgment in their favor for the balance of the note and for the later accrued and current annuities and the provision made for the speedy payment thereof examined, and held sufficient to satisfy the just demands of his parents.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed May 6, 1916. Affirmed.

*A. J. Freeborn,* and *Charles Smith,* both of Washington, for the appellants.

*Edgar Bennett,* of Washington, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs, Friedericka Geffert and Henry Geffert, owned four quarter sections of land in Washington county. They had four sons. On April 11, 1907, realizing that they were growing old and feeble in health and being desirous of relieving themselves of the burden of managing their lands, the plaintiffs conveyed their lands to their sons, one quarter section to each, and in each deed it was provided:

"The party of the second part shall pay the parties of the first part the sum of Two Hundred Dollars ($200.00) per annum as follows: Two Hundred Dollars ($200.00) to be paid on the first day of May, 1908 and a like sum to be paid on the first day of May in each succeeding year during the lifetime of the said parties of the first part or either of them. . . . Should the said party of the second part fail to make payments as above set forth or fail to pay all taxes, or taxes that may be levied against the said land for a period of one year after the said payments shall become due, the premises herein granted shall revert to and become the property of the said parties of first part."

The deeds were promptly recorded.

Defendant Adolph C. Geffert is one of the sons and a grantee of one of the quarter sections theretofore belonging to the plaintiffs. Mary Geffert is the wife of Adolph. Elmer Robbins is a person to whom Adolph mortgaged eighty acres of the land conveyed to him by his parents. Frank R. Wylie is Robbins' assignee and the present holder of that mortgage.

Adolph made various defaults in his annual payments to his parents. On May 1, 1912, he executed and delivered to his mother a note for $500, either in satisfaction of his delinquent payments, or as an acknowledgment of his indebtedness for default of payments. Credits aggregating $130 were afterwards endorsed on this note. No further payments were made by Adolph.

On November 7, 1913, Adolph and wife mortgaged eighty acres of the land conveyed to him by his parents to Elmer Robbins to secure payment of their note for $1825. Afterwards, and before maturity, this note and mortgage were acquired by Frank R. Wylie.

On May 13, 1914, the plaintiffs, Friedericka Geffert and Henry Geffert, brought this action for the balance due on the note, $370, and for the annual payment of $200 due on May 1,

1913, and for the annual payment of $200 due May 1, 1914, and for the cancellation of their deed of 1907 to Adolph, and to bar Robbins and Wylie of their interest in the land and to quiet plaintiffs' title.

Adolph Geffert and wife answered with a general denial; denied that the conditions and covenants in the deed were broken; alleged full performance; that they held receipts for all annual payments due prior to May 1, 1913; that they were entitled to one year from May 1, 1913, in which to pay the sum due on that date, and that they had made certain payments thereon; and pleading a tender of the balance and the plaintiffs' refusal to accept; and that the $500 note was given and accepted in full settlement of the earlier delinquent annuities.

Frank R. Wylie answered separately, pleading misjoinder, and setting up the mortgage executed to Robbins and assigned to him, and in a cross-petition prayed judgment against Adolph and wife and asked foreclosure of his mortgage.

The cause was tried without a jury, and the court gave judgment for plaintiffs for $770, being for the balance due on Adolph's note to his mother, and for the annual payments due May 1, 1913, and May 1, 1914, and adjudged this sum to be a first lien on the land, and ordered that upon default of payment for thirty days the land be sold, subject to plaintiffs' future annuity, to satisfy the plaintiffs' judgment. The court also gave judgment against Adolph and wife in favor of Frank R. Wylie for the amount of the note, $1825, and declared the claim to be a first lien upon Adolph's interest in the land, and ordered that upon default of payment for thirty days the land be sold subject to plaintiffs' first lien, and subject also to plaintiffs' annuity, to satisfy the judgment rendered in favor of Wylie.

Plaintiffs appeal and complain of the court's refusal to enforce the provision in the deed, which was that upon failure to make the annual payments (and to pay the taxes), "the premises herein granted shall revert to and become the property of the said parties of first part."

It is needless to repeat and enlarge upon what this court has said so frequently to the effect that penalties and forfeitures are obnoxious to judicial minds, and that slight circumstances are eagerly seized to avoid their enforcement when the

substantial rights of the parties insisting thereon can other-
wise be adequately protected.    The testimony showed that
Adolph's parents had no great concern about prompt payment
either by him or his brothers.    The mother testified:

"My son, Adolph Geffert, did not pay all of it every time, he said he
always needed the money and he had to borrow money, and it made me
feel bad and I let him have it when we did not just need it. . . . He
gave me a check but the banker would not pay it, said Adolph had no
money there, and I returned it to Adolph. . . . When he gave me
the check I told him the note was due, and he says, 'You let it go and
when I settle up with Mr. Burchfield, I will pay you the note and we will
settle up for the horses and pasture and wood.'  I owed him a little for
the pasture and I wanted him to figure it up and put it in the check, and
he said he could not, he had only $200.00 in the bank, and he did not have
any, and when I heard he had settled up with Mr. Burchfield, I went and
demanded that the note be paid or else I would sell it, and he did not like
to have me sell it, so he paid me $100.00 on the note, and then he paid
me $10.00 and $20.00 on the note, so he paid me $130.00 on the note and
that is all. . . .  I did not tell him I did not need the money; he was a
little short of money, and if I did not need it just then, they [her sons]
said I could get it when I wanted it.  The rest of the boys paid me and
he did not pay and he said he had to borrow.  I did not tell him it would
be alright for a while, he kind of made me feel bad, and I told him Henry
paid, and I wanted him to pay too; and he said he always had to borrow
because he needed so much money in his business, and I told him then he
could give me a note, and that was due and last year he gave that check
and they would not pay it. . . .  Adolph gave me his note for $500.00,
May 1st, 1912.  It was for payment of part that was due on land.  He
paid me $100.00 that year and the rest was added to the note. . . .
In August, 1913, he gave me $100.00 and I applied it on the note.  I went
to him and demanded the note be paid, and he paid me $100.00 by check.
I cashed the check. . . .  I wanted him to pay the time Henry paid up.
. . .  Then he gave me a note because he wanted it that long, so I took
his note, I could not do anything else, I did not want to get to fighting.
Up to this time he was doing like the other boys, paying part and keeping
part back.  The other boys paid sooner.  They paid when I ordered it to
be paid, but he did not."

Adolph testified:

"In 1912 I offered to pay the whole note and wanted to because I
thought I was going to run up and probably they would make demand
for it and I could not pay it; and they said further if I paid this note
they would give the money to somebody else.  In 1913, I paid $100.00, on
the $200.00.  I did not discover it had been applied on the note until I had
given the second check. . . .  I have not paid any of the installments
in full, in cash.  I paid them all in full with checks and note.  Have not
paid the note.  Have paid no part of the note.  The money endorsed on

the note should have been applied on 1913 payment. . . . I made no tender for balance of note. I paid none on the note. I told her I would pay her the note when I got able to pay it."

These excerpts from the testimony show the situation which confronted the trial court. It shows the voluntary forbearance of the mother who had formerly held the title, her natural sympathy for her son in his financial straits, her acceptance of Adolph's note in payment for past-due annuities, the misunderstanding between them as to whether his later payments were to be credited on the note or to be applied on later annuities, and the court might well give these circumstances and this course of conduct between the parties their reasonable significance, deducing therefrom that the time of payment of the annuity was not of the essence of the contract, and might conclude that the condition subsequent relating to forfeiture was not intended to be arbitrarily or summarily enforced by the grantors.

The case at bar is not different in principle from *National Land Co. v. Perry,* 23 Kan. 140, *Shade v. Oldroyd,* 39 Kan. 313, 18 Pac. 198, and *Cue v. Johnson,* 73 Kan. 558, 85 Pac. 598. It is true that in "support" deeds a condition subsequent providing for forfeiture is more rigidly enforced than in others, where an action at law for breach of covenant will give substantial and sufficient redress (*Cox v. Stambaugh,* 96 Kan. 684, 143 Pac. 513), but here the circumstances seemed to warrant the court in refusing to declare the forfeiture and in providing other adequate redress for the satisfaction of plaintiffs' claims against their son.

The judgment is affirmed.