No. 55,824

ARKANSAS LOUISIANA GAS COMPANY, A Division of Arkla, Inc., *Appellant,* v. THE STATE OF KANSAS; ROBERT C. HARDER, Secretary of Social and Rehabilitation Services; DR. GERALD HANNAH, Commissioner of Mental Health and Retardation Services; and DR. MICHAEL DEY, Superintendent of Winfield State Hospital and Training Center, *Appellees.*

(675 P.2d 369)

Opinion filed January 13, 1984.

*Milo M. Unruh,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause and *Stuart R. Collier,* of the same firm, and *Warren W. Shaw,* of Shaw, Hergenreter & Quarnstrom, of Topeka, were with him on the brief for the appellant.

*Hal E. Desjardins,* of Topeka, and *Reid Stacey,* assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general and *Bruce E. Miller,* deputy attorney general, were with *Hal E. Desjardins* on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is a declaratory judgment action for construction of a contract. The trial court ruled the contract was ambiguous and subject to the admission of extrinsic evidence to determine the intent of the parties. Arkansas Louisiana Gas Company appeals.

The appellant is a division of Arkla, Inc., a foreign corporation authorized to do business in Kansas. As the result of a merger it

succeeded to all rights and liabilities of Consolidated Gas Utilities Corporation.

The State of Kansas (appellee) is the owner of the land in Cowley County, Kansas, upon which the Winfield State Hospital is located.

The appellant obtained a pipeline right of way easement from the State of Kansas in 1952. The easement gave appellant the right to lay, maintain, operate and remove a gas pipeline in and upon the Southwest Quarter of Section 14, Township 32S, Range 4E, Cowley County. Shortly thereafter the appellant laid and constructed a gas pipeline across the real estate. The pipeline is known as the "New Salem" transmission line. The line has been used for gas transmission purposes by appellant continuously from the time of its construction to the present.

These same parties executed a meter and regulator lease (the 1957 lease) on November 22, 1957. The lease covered a small tract in the Southwest Quarter of Section 14 and provided a specific location for a regulator station. A few months later, appellees granted appellant another pipeline right of way. The right of way commenced in the Southwest Quarter of Section 14 and extended into the Southeast Quarter of Section 15 on a designated line.

After the execution of the 1957 lease and the 1958 pipeline easement, a meter and regulator station and gas pipelines were constructed on the land.

Neither the 1957 lease nor the 1958 pipeline easement made express reference to the "New Salem" transmission line which had been installed and constructed shortly after the execution of the 1952 pipeline easement. Each provided, however, "The gas company hereby agrees to relocate without cost to the State any gas lines or stations belonging to them on the lands of said center which may in the future be in the way of or interfere with new construction." This provision gave rise to this suit.

In 1964-65 appellant's gas line was in the way of a proposed new building. The State notified appellant the proposed new construction would necessitate the relocation of a portion of the "New Salem" pipeline. The company responded stating the line would be moved on an actual cost basis with the company performing the moving and the State standing the cost. The State replied citing the language in the 1957 lease and 1958 right of

way requesting the company to comply with its terms. The gas company complied and moved the gas line at its own expense.

In 1980 appellee again requested appellant to relocate its six-inch "New Salem" transmission line at the sole cost to the appellant to make way for additional construction. The appellee relied upon the 1958 right of way instrument as the basis for its demand. The appellant declined to move the line, contending neither the 1957 lease nor the 1958 pipeline easement applied to the 1952 pipeline. Over appellant's objections, the trial court admitted parol evidence to explain the instruments. The extrinsic evidence, consisting of testimony of Virgil W. Hall, retired Arkla employee; Charles V. Hamm, attorney for SRS; and George W. Jackson, M.D., former director of the hospital, showed the parties negotiated the terms of the 1957 lease and 1958 pipeline easement with the intention of requiring appellant to relocate at its expense any of its gas lines on the land of the Winfield Training Center when required by new construction as a part of the consideration for the lease and new easement. Thereafter, the trial court ruled the contracts require appellant to move its gas pipeline at its expense. This appeal followed.

Appellant argues the trial court erred in ruling the 1957 lease and the 1958 right of way grant to be ambiguous. This ruling allowed the trial court to consider testimony and evidence clarifying the intent and purpose of the contract. See *First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, Syl. ¶ 6, 602 P.2d 1299 (1979). On appeal, this court has the same opportunity as the trial court to decide the question of ambiguity, because the issue is a matter of law to be decided by the court and since the contracts were in writing. See *First National Bank of Hutchinson v. Kaiser*, 222 Kan. 274, 278, 564 P.2d 493 (1977), and *Kauk v. First Nat'l Bank of Hoxie*, 5 Kan. App. 2d 83, 87, 613 P.2d 670 (1980).

This court has held a contract to be ambiguous "when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings." 226 Kan. 619, Syl. ¶ 5. The contract provisions in question are stated exactly the same in both documents, as previously quoted.

The appellant argues the contracts were not ambiguous because there was only one meaning to be ascertained from the language. Appellant maintains "the lands of said center" can

pertain only to the land described in each instrument. Arkla places great significance on the use of the word "the" prior to the rest of the phrase, arguing "the word 'the' when used immediately before a noun" has a "specifying or particularizing effect as opposed to the indefinite or generalizing force of 'a' or 'an'."

Appellee argues, however, that both of these contracts meant "*any* gas line" owned by the gas company on *all* "the lands" of the Winfield State Hospital, including the land where the controverted gas line is located.

Both parties' arguments show the language "any gas line" and "on the lands" may be understood to have two different meanings. Were the plain meaning used, it would likely be resolved in appellee's favor because the words clearly say "the lands" not "land" of appellee. The language of the parties, however, leaves their intention doubtful. Additionally, the term "center," as used in the instruments, is ambiguous since it is nowhere defined within the documents. The instrument is ambiguous and extrinsic evidence concerning its execution is competent to determine the intention of the parties. See *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 838-39, 508 P.2d 889 (1973).

Appellant further argues the finding of ambiguity violates the rule that "[t]he meaning of a contract should always be ascertained by a consideration of all the pertinent provisions and never be determined by critical analysis of a single or isolated provision." *Weiner v. Wilshire Oil Co.*, 192 Kan. 490, 496, 389 P.2d 803 (1964). The isolated provisions here are the provisions in controversy. If this language, appellant argues, is examined on its own, it appears to be ambiguous, but if examined with the whole document it refers only to the real estate in the contract. This is not true. The provision is itself a separate paragraph in the 1957 lease and is part of a general provision in the 1958 right of way grant. The language, whether viewed separately or as a whole with the entire contract, fails to clarify which meaning was intended by the parties and is, therefore, ambiguous.

To further fortify the trial court's position it should be noted we have held: "A court may, in construing an ambiguous or indefinite contract, take into consideration the conduct of the parties as evidence of their interpretation of the document, provided that interpretation is not inconsistent with the language of the contract." *First Nat'l Bank of Olathe v. Clark*, 226 Kan.

619, Syl. ¶ 7. In 1965, the gas company moved a portion of the "New Salem" at the State's request at its own expense when the State asserted the provisions of the 1957 and 1958 instruments. The purpose of the move was to accommodate new construction. Appellant alleges this was done out of courtesy to a good customer. The record shows, however, the company made neither a reservation of rights nor informed the State its action was a public relations gesture. The State believed the company was acting according to the contracts and so communicated that belief to the company in a letter. The State received no response indicating the company believed otherwise. The first time the company informed the State it disagreed with the State's interpretation of the contract was when this dispute arose. The conduct of the gas company in moving the pipe and paying the expenses in 1965 is persuasive as to the intent of the parties concerning the contract.

The appellant finally argues the appellee's construction is unreasonable. This court has held:

"In placing a construction on a written instrument reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided." *Weiner v. Wilshire Oil Co.,* 192 Kan. at 496.

The absurdity of the contract, appellant argues, is that it would require all the gas lines owned by the appellant located on any land anywhere owned by the appellee to be moved at the appellant's expense. Not so. The contract applies only to the Winfield Training Center property, as it says.

We find ample substantial competent evidence to support the decision of the trial court.

The judgment of the trial court is affirmed.