No. 57,703

W. D. SHORT, *Appellee/Cross-Appellant,* v. GARY K. WISE, *Appellant.*

(718 P.2d 604)

Opinion filed May 2, 1986.

*Evan J. Olson,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *David E. Bengtson,* and *Kelly J. Rundell,* of the same firm, were with him on the briefs for appellant.

*Robert D. Steiger,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: W. D. Short, operator of a saltwater disposal well, brought an action to recover damages from Gary K. Wise, the landowner, for wrongful interference with his right to use the disposal well. A bench trial was conducted and the court awarded damages to Short in the amount of $46,905.40 for breach of contract, trespass and unjust enrichment. Wise appeals, claiming the trial court erred by: (1) failing to find that Short's actions terminated the written agreement between the parties, (2) awarding Short damages for lost income, and (3) finding that Wise had been unjustly enriched. Short cross-appeals, claiming

the trial court erred: (1) in determining the amount that Wise had been unjustly enriched, (2) in denying Short the expenses incurred to lessen the damages caused by Wise, and (3) in denying Short recovery for the cost of replacing the disposal well.

The background facts in this case were stipulated to by the parties. In 1944, the Sautters were the owners of the real estate. Wise, the defendant, acquired ownership of the land by transfers from his mother, Louise Sautter Wise, who had received her interest from her parents, the Sautters.

In 1944, the Sautters executed an oil and gas lease. In 1950, they signed a grant for salt water disposal to permit the drilling and operation of a disposal well on the above tract of pasture land. Since November 1, 1962, the plaintiff, W.D. Short, has had exclusive control of the disposal well and has been listed as the operator by the Kansas Corporation Commission.

After acquiring use of the disposal well, Short laid a pipeline from his Chambers lease, which produced approximately five barrels of oil per day, to the Sautter disposal well. The disposal well was operated by Short without incident from 1956 to 1980. Under the grant for the disposal well, Short allowed several trucking services to dump salt water from various surrounding leases into the Sautter well. Wise received yearly payments of $50 from some of the operators that Short allowed to dispose of salt water. Short claimed that all operators were told to pay Wise $50 per year for disposal of salt water.

In 1980, five months after Wise received full title to the property, trouble erupted. By trailing the water haulers, Wise had discovered that Short was charging them for the privilege of using the disposal well, although the haulers had failed to pay Wise his annual $50 payment. Upon advice of counsel, Wise notified all parties who used the well for salt water disposal that future disposal payments should be made directly to him and not to Short. Wise placed a padlock on the gate leading to the well. Short was informed that he could continue to dispose of salt water produced from the Chambers lease until September 1. Short, as operator of the saltwater disposal well, was subject to a fine up to $10,000 for each day the well overflowed. In response to the gate being locked and to insure that there was no overflow of the salt water at the storage tank, Short halted oil production on his Chambers lease, stopping the flow of salt water to the tank.

On October 6, 1980, Short received a restraining order and, consequently, Wise removed the lock from the gate. Short then resumed oil production on the Chambers lease, utilizing the Sautter disposal well. On May 20, 1982, this action was filed. Short claimed that Wise had: (1) blocked his access to the disposal well, (2) wrongfully interfered with his right to use the disposal well, and (3) been unjustly enriched when he collected fees for disposal of salt water from the haulers. Short also claimed he should be awarded the cost of constructing a replacement for the disposal well. Wise claimed that Short, by his actions, had forfeited his right to operate the disposal well. Prior to trial, Short continued to dispose of salt water from the Chambers lease into the disposal well and Wise received all payments from the operators of various wells for disposal of water into the Sautter well. Then, on April 22, 1983, the KCC ordered that operation of the disposal well cease. It was later plugged by Wise.

After a bench trial, the judge found that Short was entitled to dispose of waste water from leases outside of the Clearwater field. The judge awarded damages to Wise for those fees which had not been paid by the operators using the disposal well. Short was awarded $22,792 for loss of income for oil production from the Chambers well, one-half the net income Wise received from operation of the disposal well during the dispute ($25,204) as unjust enrichment, and punitive damages of $1. Wise received a setoff for payments Short failed to pay for additional disposal of salt water into the well. Short's judgment was $46,905.40. Both parties appealed the judgment.

Wise claims Short was not entitled to damages. He contends that his termination of Short's operation was proper because of Short's unauthorized use of the disposal well. In this case, a determination of the rights and responsibilities of the parties requires interpretation of the written grant.

The construction of a written instrument is a question of law; therefore, the instrument may be construed and its legal effect determined by the appellate court. *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985). The court will strive to place a reasonable, rather than an unreasonable, interpretation on an instrument. *Arkansas Louisiana Gas Co. v. State*, 234 Kan. 797, 675 P.2d 369 (1984). In so doing, the court will look first to the

"four corners" of the document and attempt to construe the entire contract harmoniously. *Brown v. Lang*, 234 Kan. 610, 675 P.2d 842 (1984). When the intent of the parties is clearly ascertainable by construction from its four corners, it is not considered ambiguous. *Brown v. Lang*, 234 Kan. 610. An instrument is ambiguous when its language may be understood to reach two or more possible meanings. *Arkansas Louisiana Gas Co. v. State*, 234 Kan. 797.

After examining the grant, the trial judge correctly concluded that Short was authorized to dispose of salt water from leases beyond the Clearwater field, but within the same "general area." The pertinent language is contained in paragraph three of the document, which states:

"Now, THEREFORE, for and in consideration of Two Hundred and no/100 Dollars ($200.00), in hand paid, the receipt and sufficiency of which is hereby acknowledged, First Parties [Sautters] do hereby grant and convey unto Second Party the right to use and maintain the salt-water disposal well on the above described acreage, together with the right to transport and conduct salt water and other waste products from oil field operations on said acreage, or from such operations on lands or leases operated by Second Party or others in the same general area, over and across said lands, and to inject the same into said disposal well or system, and together with the right of ingress and egress over said lands at all times for any purpose whatsoever, and together with the right to repair, replace and remove any such pipe line or lines or other property in whole or in part, at the convenience of Second Party; and First Parties further grant and convey unto Second Party the right, at any time, to remove from said well and from the premises, any and all casing, pipe line or lines, tanks, materials, equipment and other personal property of every kind or nature whatsoever, heretofore or hereafter placed on the lands hereinabove described by Second Party."

The lease indicates it was to run for one year, with the grantee having the option to continue the lease at the end of the term. The agreement specifically provides for additional yearly payments of $50 per lease for disposal of salt water from leases other than those described in the instrument.

The trial judge found that under the agreement Short was entitled to dispose of waste water from leases in the general area of the Clearwater field and that Wise had acted improperly by using self-help when he excluded Short from using the disposal well. In addition, the court found that Short had failed to pay Wise for disposal of salt water from certain leases. The trial judge applied equitable principles to determine if the written agreement should be terminated by the court.

Courts of equity do not favor forfeiture of easements or licenses and will be alert for ways to grant relief against such forfeiture. 25 Am. Jur. 2d, Easements and Licenses §§ 101, 102; Annot., 154 A.L.R. 5. Equity will not enforce a forfeiture where the circumstances permit it to decline to do so and the substantial rights of the parties can otherwise be adequately cared for by a money equivalent for nonperformance. *Geffert v. Geffert*, 98 Kan. 57, 157 Pac. 384 (1916).

The trial judge found that Short's failure to pay for disposal of salt water from certain leases was a misunderstanding rather than intentional conduct and that Wise's action in using self-help was more deliberate and potentially hazardous. Under the circumstances, he found that Short should not forfeit the agreement, but should compensate Wise for Short's failure to see that the payments for disposal of salt water were made. The trial judge's decision with respect to the obligations of each party is correct and supported by the language of the grant.

Short next claims he was entitled to the profits from oil production he lost when Wise's actions caused him to cease production. Finding that Wise had either breached the terms of the grant or trespassed on Short's rights and thus wrongfully caused Short to shut down production on the Chambers lease from May 23, 1980, to October 16, 1980, the court awarded Short $22,792 as lost profits during the shutdown. In awarding lost profits, the court followed the rationale of *Continental Oil Company v. SS Electra*, 431 F.2d 391 (5th Cir. 1970).

In *Continental*, the owners of an offshore oil drilling platform brought a libel in rem action against the owners of a boat which collided with the platform. In spite of the fact that plaintiffs did not lose any oil as a capital asset and presumably would ultimately recover the full reserves from the pool, the court utilized maritime law and awarded damages for profits lost while the platform was being repaired. The court equated the loss of profits for inability to use the drilling platform as similar to a ship being damaged and laid up for repairs.

Wise argues that the proper measure of damages in Kansas is controlled by *Mai v. Youtsey*, 231 Kan 419, 646 P.2d 475 (1982). *Mai* involved a dispute between two assignees of portions of an oil and gas lease over the use and maintenance of roads on the leasehold. The defendant had padlocked the gate on the road

leading to Mai's well. As a consequence of the defendant's action, Mai was forced to shut down production. Mai was awarded $1,416 for lost production based on the value of the oil that could have been produced during the eleven-day shutdown. On appeal, this court rejected the trial court's damage award, finding that Mai had lost no oil from delayed production because the oil reserve was still available to him. Mai's damage was the delay in recovering the oil from the reserve. The record showed that Mai had failed to sustain his burden of proof to show that he was damaged.

The *Mai* rule controls in the present case. An oil producer who suffers a delay in production suffers no loss of his oil reserve because the reserve is still available to the producer. A delay in production of oil may cause damages because of a market loss sustained by the producer. Unlike Mai, Short actually sustained damages because he was unable to produce the oil during a period when oil prices dropped.

Exhibits presented at trial indicated that Short lost 5 barrels a day for 146 days.

"From 5/23/80 — 10/15/80
Income from oil from producing Chambers wells

| | | |
|---|---|---|
| 5bb per day for 146 days: | | $27,625.00 |
| Ave. daily production '75 - '79 | = | 4.97 bb |
| Ave. daily production '81 - '82 | = | 5.11 bb |
| 05/24/80 - 07/31/80 69 days x 5bb x $39 | = | 13,455.00 |
| 08/01/80 - 08/31/80 31 days x 5bb x $38 | = | 5,890.00 |
| 09/01/80 - 10/16/80 46 days x 5bb x $36 | = | 8,280.00 |
| | | $27,625.00" |

Examination of this exhibit indicates that the price of crude declined roughly three dollars a barrel between May 24, 1980, and October 16, 1980.

| | | |
|---|---|---|
| 5/24/80 - 7/31/80 69 days x 5 bb x $3 | = | 1,035.00 |
| 8/1/80 - 8/31/80 31 days x 5 bb x $2 | = | 310.00 |
| | | $1,345.00 |

The $1,345 figure represents the loss in market value of plaintiff's reserves occasioned by the five-month delay in production. The trial judge's award to Short for lost profits due to Wise's action is reduced to the loss in the market value of the oil.

Both parties claim that the trial judge erred in awarding Short one-half of the income Wise received after Wise locked the gate and operated the disposal well from May 1980 through April

1983. The parties stipulated that the total net income from operation of the disposal well for the period was $50,407.90. The court based this portion of its award upon the theory that Wise was unjustly enriched in this amount because of his actions.

The phrase "unjust enrichment" is used in law to characterize property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. 66 Am. Jur. 2d, Restitution and Implied Contracts § 3. In Kansas, it has been stated that the substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him. *Wheat v. Finney*, 230 Kan. 217, 220, 630 P.2d 1160 (1981). The doctrine prevents one party from profiting unjustly at the expense of another, but there must be some specific legal principle or situation which equity has established or recognized to bring a case within the scope of the doctrine. *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 559, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068, *reh. denied* 435 U.S. 961 (1978).

Wise argues his action in terminating Short's operation by seizing the disposal well was not unlawful, and he, therefore, was at liberty to operate the well. Conversely, Short's position is that Wise's violation of the agreement was wrongful and that Wise was unjustly enriched by any income received from operation of the well.

Concluding that Wise improperly interfered with Short's operation, the trial judge determined that Short was entitled to only one-half of the income received by Wise while operating the disposal well. He determined that a large portion of the funds collected by Wise were obtained for disposal of salt water from lessees not covered by the grant, and these funds should not be awarded to Short as money Wise unjustly received. Because the evidence was incomplete and was presented in a manner that made it impossible "to keep up with," the judge was unable to make a clear determination as to the actual damages suffered by the parties.

The burden of proving the damages incurred rests on the plaintiff. It is the function of the trier of fact to determine the amount of damages that should be awarded to a party, based upon evidence of the loss suffered. A reasonable basis for com-

putation and the best evidence obtainable under the circumstances will enable the trier of fact to make an estimate which provides an adequate recovery of damages.

Upon appellate review, this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial judge. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 624 P.2d 420 (1981). The trial judge's determination that Short was entitled to $25,204 as damages for Wise's unjust operation of the disposal well was proper.

Short claims that to continue oil production, he was forced to drill a disposal well on his Chambers lease in an effort to minimize damages he suffered because of the defendant's action. In addition, he contends that if he had been operating the disposal well instead of Wise, the K.C.C. would not have required that the well be taken out of service and plugged. Relying on the general rule that one is entitled to recover amounts reasonably incurred in an effort to minimize damages caused by the wrongful conduct of another, Short seeks to recover the expenses he incurred in drilling a new disposal well. The trial court rejected Short's claim. In reaching its decision, the court noted that Short's disposal well is a valuable improvement which he will continue to enjoy and that there was no evidence that if Short had been operating the disposal, the KCC would not have shut down the well.

The basic principle of damages is to make a party whole by putting him or her back in the same position as if the injury had not occurred, not to grant a windfall. *State ex rel. Stephan v. Wolfenbarger & McCulley, P.A.*, 236 Kan. 183, 690 P.2d 380 (1984). Damages recoverable for breach of an agreement are limited to those which may fairly be considered as arising, in the usual course of things, from the breach itself, or those reasonably assumed to have been within the contemplation of both parties as the probable result of the breach. *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 563 P.2d 414 (1977). Under the theory of avoidable consequences, the plaintiff is under an obligation to mitigate damages by taking reasonable steps to prevent unnecessary damages from occurring. 5 Corbin on Contracts § 1039 (1964). While an injured party will be entitled to recover all damages sustained because of the defend-

ant's conduct, a plaintiff's inaction in failing to mitigate damages will result in recovery being denied for those increased costs occasioned by the plaintiff's failure to act reasonably. *Schraft v. Leis*, 236 Kan. 28, 686 P.2d 865 (1984).

Here, Short's request that he receive as damages his expenses incurred in the cost of drilling a disposal well was properly rejected. Under the facts of this case, the decision of the trial judge was correct. To allow Short to be reimbursed for his expenses and the entire cost of drilling a new disposal well is not justified.

The judgment is affirmed as modified and remanded for modification of the journal entry in accordance with this opinion.