**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 19 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CLARENCE BECK, Trustee of the
Clarence J. Beck Revocable Trust;
JAMES L. PRENTICE, Trustee of the
CRJ Farm Trust; DAROLD D.
YATES; CAROL LEE YATES;
HAROLD W. NOSSAMAN; MARY
LOU NOSSAMAN; MARK A.
YATES; STEVEN B. YATES; GARY
S. NOSSAMAN; DEBRA
NOSSAMAN; ANDREW OIL & GAS
PARTNERSHIP; HAROLD
BERENDS; MARK BETZEN;
GWENDOLYN A. BETZEN; JOHN
CHITWOOD; DEAN DYCHE; DEAN
FITZSIMMONS; GARY
FITZSIMMONS; DALLAS GLENN;
KENNETH GLENN; LESTER
GOYEN; LLOYD MCCLELLEN;
EDITH GILLEN; DONALD SMITH;
JOHN FITZSIMMONS; MARIETTA
GILMORE; SHERRY FREUND;
WILLIAM JOSEPH FREUND;
ROBERT H. WITHERS; J. LAYLE
WOODARD; GEORGIA LEE
WOODARD,

    Plaintiffs-Appellees/
    Cross-Appellants,

v.

No. 97-3352, 97-3367

NORTHERN NATURAL GAS
COMPANY,

Defendant-Appellant/
Cross-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 96-1150-WEB)

Jeff Kennedy (Ann T. Rider and Kathryn Gardner with him on the briefs), Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, Kansas, for Defendant-Appellant/Cross-Appellee.

Lee Thompson (John V. Black and Thomas V. Black, Black's Law Office, P.A., Pratt, Kansas, with him on the briefs), Triplett, Woolf & Garretson, L.L.C., Wichita, Kansas, for Plaintiffs-Appellees/Cross-Appellants.

Before **KELLY**, **MCKAY**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

In this diversity action, Defendant-Appellant Northern Natural Gas Company ("Northern") appeals from a jury verdict and an award of attorney fees and costs in favor of Plaintiffs-Appellees, numerous landowners ("landowners") in Pratt and Kingman counties, Kansas. The landowners cross-appeal the district court's decision to limit their recovery to fair rental value of their subsurface property, the court's determination of attorney fees, and the court's refusal to

allow prejudgment interest. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

Background

This case involves the vertical migration of natural gas between two subsurface geological reservoirs, or formations, located in the Cunningham Field, once one of the most prolific production areas of oil and gas in Kansas. Such formations, once depleted of native natural gas, can be injected with natural gas for storage to enable pipeline companies to ensure supply of natural gas during times of peak demand. In 1977, Northern was authorized by the Kansas Corporation Commission ("KCC") and the Federal Power Commission to store gas in the Viola formation underlying 23,000 acres of the landowners' property. Under leases subsequently negotiated with the landowners, Northern obtained storage rights to this formation, and began injecting gas in August of 1978.

Sometime after Northern began storing gas, some of the gas vertically migrated from the Viola to the Simpson formation, a smaller formation directly beneath the Viola. In September of 1993, a well was drilled and completed in the Simpson formation, and composition and pressure data indicated that the gas produced was storage gas from the Viola formation. In response, Northern thoroughly evaluated the Simpson formation and determined that geological faults

had allowed gas to migrate from the Viola into the Simpson formation. Northern then sought certification of the Simpson formation before the KCC. After a public hearing, the KCC determined that the formation was suitable for gas storage, and that such storage was in the public interest. Northern subsequently obtained lease agreements from approximately two-thirds of the affected landowners, and exercised its eminent domain rights against the remaining landowners, including the plaintiffs.

The landowners brought an action against Northern, asserting claims of trespass and unjust enrichment related to the migration of gas to the Simpson formation. The case was removed from state district court and tried before a jury in federal district court. The jury found in favor of the landowners on both claims and awarded $100.00 per acre as fair rental value of the property for the period in question. The district court subsequently assessed attorney fees, expenses, and costs in the amount of $139,554.10 against Northern.

On appeal, Northern raises three issues. First, insufficient evidence existed for the jury to find that Northern's storage gas trespassed onto all of the landowners' properties. Second, insufficient evidence existed for the jury to conclude that Northern was unjustly enriched due to the migration of storage gas onto the landowners' properties. Third, the district court erroneously interpreted Kan. Stat. Ann. § 55-1210(c)(3) (1994), allowing the landowners their attorney

fees, expenses, and costs.

In their cross-appeal, the landowners raise three issues. First, the district court erred in limiting them to a single recovery, the fair rental value of their property. Second, the district court erred in calculating attorney fees based on the lode star method rather than on the contingency fee contract entered into by the landowners. Finally, the district court erred in not allowing the landowners to claim interest on the damages.

## Discussion

### I. Northern's Claims on Appeal

### A. Sufficiency of Evidence on Trespass Claim

Northern contends that the landowners failed to meet their burden of proof as to their claim that Northern's storage gas trespassed onto their properties. When a jury verdict is challenged on appeal, our review is limited to determining whether that verdict is supported by substantial evidence when the record is viewed in the light most favorable to the prevailing party. See Western Gas Processors, Ltd. v. Woods Petroleum Corp., 15 F.3d 981, 987 (10th Cir. 1994). "'Substantial evidence, while something less than the weight of the evidence, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the

evidence.'" Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1468 (10th Cir. 1992) (quoting Gilbraltar Sav. v. LDBrinkman Corp., 860 F.2d 1275, 1297 (5th Cir. 1988)). We "will not retry the issues or second guess the decision-making of the jury. It is the jury's exclusive province to assess the credibility of witnesses and determine the weight to be given to their testimony." Lamon v. City of Shawnee, 972 F.2d 1145, 1159 (10th Cir. 1992).

Northern maintains that each of the landowners was required to prove that the storage gas had entered the Simpson formation underlying his or her property. Although conceding that some of the landowners met this burden, Northern contends that the jury verdict finding that a trespass had occurred as to all of the landowners was improper. Under the second element of the district court's instruction on trespass, a plaintiff was required to prove "[t]hat the defendant Northern caused an entry of storage gas on to the plaintiff's property." Aplt. App. at 212.

Applying the above standard of review, it was reasonable for the jury to infer from the evidence that the landowners sufficiently met their burden of proof. The district court reached the same conclusion. See Aple. Brief, app. C at 2. Northern is correct in its assertion that the landowners failed to directly prove that the storage gas was under each of their properties. However, the jury heard evidence related to the geological characteristics of the Simpson formation;

specifically, that the formation is a blanket sand which is highly permeable, continuous, and interconnected.    See Tr. at 91, 217-18.  In addition, the jury heard that a saltwater buffer zone is necessary as part of an integrated system for storing gas in the formation,   see Tr. at 86-87, 216, 244, 286-90, 310-11, 430, and that rentals are normally paid for the entire acreage, whether used for buffer or gas storage.  See Tr. at 288.  Most important, the jury heard evidence from the KCC proceedings, in which Northern sought to prove that the entire acreage was suitable for the storage of natural gas.  In those proceedings, Northern introduced evidence showing that up to ten billion cubic feet of storage gas had migrated from the Viola to the Simpson formation,     see Tr. at 85, 91, and that as much as twenty-three percent of the total volume capacity of the two formations was in the Simpson formation.    See Tr. at 100.  In his testimony before the KCC, introduced at trial, a Northern senior engineer stated that Northern had actually been storing gas in the Simpson formation under all of the landowners for the prior seventeen years.  See Tr. at 98.

Northern attempts to characterize this prior testimony as being introduced solely for the purposes of impeachment.  However, our reading of the transcript indicates that it was offered as substantive evidence.  John Rose, Northern's senior engineer, was called by the landowners as an adverse witness for the purpose of showing the jury what evidence the KCC considered when deciding to

certify all of the Simpson formation as suitable for storage.  See Tr. at 98-99.
The landowners could have made the nature of this evidence more clear both for
the jury and for appellate review if they had identified, marked, and introduced
into evidence the transcript from the KCC proceeding.

Finally, another of Northern's witnesses at trial testified that the entire
Simpson formation provided aquifer support for the storage operation.  See Tr. at
430.  It seems clear that a jury could make a reasonable inference from this
evidence that there was an entry of storage gas in each of the landowners'
properties.  See Sunward Corp. v. Dun & Bradstreet, Inc. , 811 F.2d 511, 521
(10th Cir. 1987) (jury entitled to draw reasonable inferences from circumstantial
evidence).

B.  Sufficiency of Evidence on Unjustment Enrichment Claim

Northern also argues that the landowners failed to meet their burden of
proof as to their claim that Northern was unjustly enriched by storing its gas in
the Simpson formation.  Again, our review is limited to determining whether that
verdict is supported by substantial evidence.  See Western Gas , 15 F.3d at 987.

Northern's challenge to the evidence on the unjust enrichment claim is
essentially the same as its challenge to the evidence on the trespass claim, that is,
that the landowners failed to prove that storage gas was present under each of the

landowner's property.  As such, we need not reiterate the evidence at trial supporting the landowners' claim that the trespass was to the entire Simpson formation.  In addition, the jury heard evidence that having gas in the Simpson formation benefitted Northern by increasing Northern's ability to store gas and sell during times of peak demand,    see Tr. at 80-81, 92, 289-90, and that the gas stored in the Simpson formation was worth at least $12,000,000.        See Tr. at 92. Therefore, we hold that there was substantial evidence to support the jury's verdict on unjust enrichment.

### C.  Interpretation of Kan. Stat. Ann. § 55-1210(c)(3)

Finally, Northern contends that the district court misinterpreted Kan. Stat. Ann. § 55-1210(c)(3) in allowing the landowners to recover attorney fees, costs, and expenses.  We review de novo the district court's statutory interpretation. See Ellis v. University of Kansas Med. Ctr.    , 163 F.3d 1186, 1193 (10th Cir. 1998).  Under the rules of statutory interpretation in Kansas, "if a statute is plain and unambiguous, [the court] must give effect to the expressed statutory language.  A statute is ambiguous when two or more interpretations can fairly be made."  Link, Inc. v. City of Hays   , No. 80,523, 1999 WL 22975, at *4 (Kan. Jan. 22, 1999) (citations omitted).

Section 55-1210(c) deals with storage gas that has migrated to an adjoining

property. According to the statute, the gas injector does not thereby lose title to the gas, as long as it can prove that the gas was originally injected into its underground storage. The statute further gives the injector the right to conduct well tests on the adjoining property in order to determine ownership of the gas. Subsection (c)(3), [1] which is at issue here, deals with the rights of those persons upon whose property gas has migrated. As reflected by the emphasized portion of the statute, if litigation is necessary to enforce rights under subsection (c), in this case compensation for use of the substratum, attorney fees and costs are recoverable if the injector does not prevail. Clearly, litigation was necessary here and the injector did not prevail.

Under Northern's reading of this subsection, attorney fees and costs are available only when disputes over the ownership of gas are at issue. Such an interpretation ignores the plain language of the statute, as does Northern's characterization of the "rights under this subsection (c)" as only those described

---

[1] Subsection (c)(3) provides:

> The owner of the stratum and the owner of the surface shall be entitled to such compensation, <u>including compensation for use of</u> or damage to the surface or <u>substratum, as is provided by law, and shall be entitled to recovery of all costs and expenses, including reasonable attorney fees, if litigation is necessary to enforce any rights under this subsection (c)</u> and the injector does not prevail.

Kan. Stat. Ann. § 55-1210(c)(3) (emphasis added).

in subsections (c)(1) and (c)(2), that is, the ownership rights of the injector over the migrated gas and the right to conduct reasonable tests to determine ownership. The district court found that the "rights under this subsection (c)" also referred to the right of the property owner in subsection (c)(3) to compensation for use of or damage to the surface or substratum, as is provided by law.    See Aple. Brief, app. A at 15.  Because the landowners recovered compensation for Northern's use of the Simpson formation and litigation was necessary to enforce this right, they were entitled to the fees and expenses described in subsection (c)(3).  We do not find the statute to be ambiguous, and agree with the district court's analysis.

Northern argues that the district court's construction of the statute leads to an absurd result, where the injector always pays for attorney fees and expenses, at least where litigation occurs.  Thus, when there is litigation over the ownership of gas and it is determined that the gas belongs to the property owner, the gas injector pays for attorney fees and expenses.  When the litigation results in a finding that the gas belongs to the injector, then the property owner can assert a claim of trespass on the basis of that finding and be entitled to attorney fees and expenses.  However, in painting this scenario, Northern ignores the district court's conclusion that § 55-1210(c)(3) does not create an independent statutory cause of action for trespass.    See Aple. Brief, app. A at 14-15.  Thus, the court required the landowners to prove each of the elements of common law trespass,

which go beyond simply showing that an injector's gas has migrated onto a plaintiff's property. Specifically, a plaintiff is further required to show intent or negligence on the part of the injector. See Aplt. App. at 212 (jury instruction on trespass). It is true, as Northern asserts, that a statute should be given "a reasonable construction so as to avoid unreasonable or absurd results." Tompkins v. Bise, 910 P.2d 185, 188 (Kan. 1996). However, the fact that § 55-1210(c)(3) does not provide an independent cause of action for trespass avoids the absurdity that Northern envisions. While our construction of the statute may not produce the kind of results that Northern considers optimal, we "must give effect to the intent of the legislature as expressed rather than determine what the law should or should not be." Id.

## II. Landowners' Cross-Appeal

### A. Single Recovery

Not content with one recovery, in their cross-appeal the landowners first challenge the district court's ruling on summary judgment that the fair rental value of the Simpson formation was the proper measure of damages for both their trespass and their unjust enrichment claims. Instead, the landowners argue, they were entitled to a recovery on each claim. We review de novo the legal determinations made by the district court. See Paradis v. Montrose Mem'l Hosp.,

- 12 -

157 F.3d 815, 817 (10th Cir. 1998).

In Kansas, a plaintiff is limited to one recovery for a wrong. See York v. InTrust Bank, 962 P.2d 405, 432 (Kan. 1998). "The basic principle of damages is to make a party whole by putting him or her back in the same position as if the injury had not occurred, not to grant a windfall." Short v. Wise, 718 P.2d 604, 609 (Kan. 1986). To the extent that the landowners claim an entitlement to double the fair rental value, it is foreclosed by the above principle that a plaintiff is limited to one recovery for a wrong, which in this case was Northern's failure to pay a fair rental for the use of the Simpson formation.

However, the landowners argue that Northern was also liable for profits gained as a result of the use of the formation. In support of this claim, they cite Short v. Wise, where Short, the plaintiff, was awarded one-half of the income that Wise, the defendant, received from disposal haulers in breach of the contract between Short and Wise. But for Wise's actions, these funds would have gone to Short, and the Kansas Supreme Court affirmed the trial court's determination that Wise had profited unjustly at the expense of Short, and that Wise must restore to Short "that which in equity and good conscience belong[ed] to him." Id. at 608. In contrast, in this case there is no indication that, but for Northern's actions of storing gas in the Simpson formation, profits gained as a result would have gone to the landowners. The district court stated that the landowners "offer[ed]

nothing to show that the profits earned by Northern could reasonably be considered a benefit conferred upon Northern by them." Aple. Brief, app. A at 18-19. We agree. The benefit that Northern received from the landowners was the use of the Simpson formation without payment of rent, for which the proper measure of damages was, as the district court found, fair rental value.

## B. Attorney Fees Calculation

The landowners next contend that the district court erred in calculating attorney fees based on the lodestar method rather than on their contingency fee contract. As the prevailing party, the landowners were entitled to reasonable attorney fees under Kan. Stat. Ann. § 55-1210(c)(3). In determining the fees, the district court considered, among other factors from Rule 1.5 of the Model Rules of Professional Responsibility, the landowners' contingency fee contract with their attorneys. However, given the likelihood of success in the suit, the absence of a showing that counsel was precluded from other employment, and the lack of unique time limitations in the case, the court decided that the lodestar method (based on counsel's time records and hourly rates) was more appropriate. We agree.

In Kansas, "[t]he reasonable value of attorney fees lies within the sound discretion of the district court." Hawkins v. Dennis, 905 P.2d 678, 692 (Kan.

1995).  The trial judge is an expert in determining the value of legal services, and in so doing may draw on his own knowledge and experience.  See City of Wichita v. Chapman, 521 P.2d 589, 599 (Kan. 1974).  There is authority for the suggestion that a contingent fee contract should not be considered in determining reasonable attorney fees, except "to establish the employment of counsel and the purpose for which counsel were employed."  Wolf v. Mutual Benefit Health & Accident Ass'n, 366 P.2d 219, 234 (Kan. 1961);  see Board of County Comm'rs v. Willard J. Kiser Living Trust, 825 P.2d 130, 146 (Kan. 1992);  In re Estate of Robinson, 690 P.2d 1383, 1389 (Kan. 1984).  However, other cases from Kansas indicate that, although a contingency fee contract cannot be the only criteria for determining a reasonable fee, it may be considered as one of several factors.  See Hawkins, 905 P.2d at 691-92;  Farmco, Inc. v. Explosive Specialists, Inc., 684 P.2d 436, 444 (Kan. App. 1984).  Here, the district court considered the landowners' contingency fee contract among other factors and determined that the lodestar method was more appropriate given the nature of this case.  We are unable to say that the court abused its discretion.

## C.  Interest on Damages

The landowners finally argue that the district court abused its discretion both by not allowing the landowners to claim interest as an element of damages

and in failing to award prejudgment interest on the damages recovered by the landowners. We review the district court's decision as to prejudgment interest for an abuse of discretion. See Neustrom v. Union Pac. R.R. Co., 156 F.3d 1057, 1067 (10th Cir. 1998).

Although prejudgment interest is not generally allowed on a claim for unliquidated damages, in Lightcap v. Mobil Oil Corp., 562 P.2d 1, 16 (Kan. 1977), the Kansas Supreme Court carved out an exception to this rule in which the court may, in its discretion, award interest or its equivalent as an element of damages where necessary to arrive at fair compensation. See also Farmers State Bank v. Production Credit Ass'n, 755 P.2d 518, 528 (Kan. 1988). In its ruling on the landowners' claim for prejudgment interest, the district court stated:

> Clearly, the general rule is that prejudgment interest is only available where the damages are liquidated. There is no dispute here that the damages were unliquidated. Insofar as plaintiffs' claim for unjust enrichment is concerned, however, the court concludes that it has some discretion in determining whether or not to award prejudgment interest. After considering the facts of this case, the court concludes that plaintiffs are not entitled to an award of prejudgment interest. For one thing, the court finds that Northern's conduct in this case was neither willful nor so egregious as to weigh in favor of such an award. In this regard, the court notes there was no evidence to suggest that the initial migration of gas onto plaintiffs' property was anything other than accidental. Moreover, the court concludes that the jury's award in this case adequately compensates plaintiffs for the injury suffered and that prejudgment interest is not required to make them whole.

Aple. Brief, app. B at 5-6 (citations omitted). Under the abuse of discretion

- 16 -

standard, the district court will be reversed only if it "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Skaggs v. Otis Elevator Co., 164 F.3d 511, 514 (10th Cir. 1998) (quotation omitted). Not only did the court not abuse its discretion in not allowing the landowners to claim interest as an element of damages and in not awarding prejudgment interest, its rulings were eminently reasonable and just.

AFFIRMED.